[No. 9425.   Department Two.   September 6, 1911.]

BESSIE KENNY HILLMAN, a Minor, by C. D. Hillman, her Guardian, etc., Appellant, v. STAR PUBLISHING COMPANY, Respondent.[1]

LIBEL AND SLANDER — PUBLICATION OF PHOTOGRAPH — STATUTES— CONSTRUCTION. The publication of plaintiff's photograph, which was a true likeness and inoffensive in itself, in connection with a story of her father's crime, is not a libel as defined by Rem. & Bal. Code, §§ 2424 and 292, providing that it is a libel to expose any living person to hatred, contempt or obloquy or to deprive him of the benefit of public confidence or social intercourse, and that it is sufficient to allege generally that the publication was of and concerning the plaintiff, without alleging extrinsic facts showing the application of the matter; since the photograph did not make the article "of and concerning" the plaintiff.

TORTS—RIGHT OF PRIVACY—PUBLICATION OF PHOTOGRAPH. The publication of an inoffensive photograph and true likeness of a person, in connection with the story of her father's crime, is not an invasion of the right of privacy for which the law affords any remedy.

[1]Reported in 117 Pac. 594.

Appeal from a judgment of the superior court for King county, Albertson, J., entered November 18, 1910, upon sustaining a demurrer to the complaint, dismissing an action for libel. Affirmed.

*Frederick R. Burch* and *Oliver Hulback*, for appellant.

*John H. Perry*, for respondent.

CHADWICK, J.—On or about August 26, 1910, a Federal grand jury indicted C. D. Hillman and he was arrested. This fact was made merchandise by defendant, the publisher of a newspaper in the city where plaintiff resides. It published on the front page of its paper the following article:

### "HILLMAN ACCUSED OF FRAUD.

### "WARRANT FOR BIG REAL ESTATE SHARK.  FEDERAL OFFICIALS ARE HOT ON HIS TRAIL.

"Charged by the United States government officials with attempting one of the biggest swindles in the history of the northwest, C. D. Hillman, millionaire real estate operator, whose specialty has been selling lands to poor men, will be arrested this afternoon.

"Warrants issued today charge Hillman and three of his associates with conspiracy for using the mails to defraud. Other charges will follow says United States District Attorney Todd. The penalty prescribed is not more than five years in the penitentiary and not more than $10,000 fine. With Hillman, in the warrant signed today by United States Post Office Inspector C. J. Backus are: Sam S. Sutter, Hillman's lieutenant in operating the steamer Venus in carrying would-be purchasers to see the Hillman property. T. E. Keeley, in charge of the Everett offices. H. C. Peet, president of the 'Great Northern Land and Loan Company,' 470 Arcade building. The warrant for Hillman's arrest follows a searching investigation by the federal officials in Seattle. A great mass of evidence has been gathered.

### "THE SPECIFIC CHARGE.

"The specific charge laid against Hillman today is based on a new real estate deal Hillman is now engaged on, ten miles from Everett. Hillman has acquired title to about 12,000 acres of logged off lands at Port Susan. Hillman called this the 'Birmingham Townsite Addition' to Everett.

He was offering parcels of this land for sale at $100 and more. Prospectuses and blind advertisements were sent out by Hillman, it is charged, giving glowing accounts of the future of Birmingham. A sawmill and charcoal factory were all to be established there Hillman claimed. All these things, according to the federal officers, were untrue and without foundation.

### "WAS IN TROUBLE BEFORE.

"Hillman was convicted on a similar charge in 1905. At that time he appealed to the supreme court and a new trial was granted on the contention that Hillman should have been granted a change of venue prior to his first trial. For some reason, this new trial was never held, and Hillman slowly but very energetically resumed operations in Seattle. The first complaints against Hillman were made after his management of a sale of lots on Lake Washington. This tract he called the 'Garden of Eden.' Among other specific complaints made in the warrant upon which Hillman will be arrested today, is one that alleges that on April 2, 1909, he rented a box number 1393 in the Seattle post office under the assumed name of C. A. Spencer. This constitutes another violation of the federal statutes. Filed with the complaint against C. D. Hillman and three of his associates today in the United States court are marked copies of two Seattle newspapers in which appeared last Sunday a score or more of 'blind' want advertisements, calculated, the complaint alleges, to defraud the readers of these papers."

It also published a photograph of C. D. Hillman and other members of his family, including this plaintiff, who has brought this action for damages. It is alleged:

"That by reason of said printing and publishing of said articles and said headlines, in conjunction with the photograph of said plaintiff, and that of C. D. Hillman, plaintiff has been and is exposed to public hatred, contempt and ridicule, and has thereby been deprived of the benefits of public confidence and social intercourse, and has thereby suffered great shame, humiliation and sense of disgrace, to her great damage."

Defendant demurred to the complaint, and the court below found that it did not state facts sufficient to constitute a cause

of action, and ordered it dismissed. From this judgment an appeal is taken.

It is insisted that a right of recovery can be sustained upon the grounds, both or either, (a) that the article and photograph when taken together are libelous, or (b) that the unauthorized publication of the photograph is an invasion of the right of privacy, and when coupled with the offensive article, entitles plaintiff to compensatory damages. Whether the act of the defendant is a libel can be disposed of by reference to our statute. Turning to §§ 2424 and 292, Rem. & Bal. Code, we find that it is a libel "to expose any living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse;" and that "In an action for libel or slander, it shall not be necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause arose, but it shall be sufficient to state generally that the same was published or spoken concerning the plaintiff; and if such allegation be controverted, the plaintiff shall be bound to establish on trial that it was so published or spoken." The complaint alleges that the photograph is a true likeness of plaintiff. We do not find that the mere publication of a photograph, although under circumstances indicating a wilful disregard of private right, is such a publication as is contemplated by the statute. It could have no tendency to expose a party to contempt, ridicule, or obloquy, or operate to deprive her of social enjoyment among right-thinking people. It would rather excite pity for the victim, and invite the contempt of the public toward those who, for the mere sake of sensation and gain, are willing to take that which is not their own to serve an unworthy end. Again, the published photograph being a true likeness and being in and of itself inoffensive, it cannot be held that, because of its publication in connection therewith, the article was "of or concerning" the plaintiff. We shall

not pursue this feature of the case beyond the statutes, for we deem them to be controlling.

Although it is not contended in the briefs that any purpose was served by the publication of plaintiff's photograph —indeed, it was admitted in oral argument that a wrong has been done to plaintiff, as indeed it has; yet we find that plaintiff's case does not fall within any of the rules so far recognized by the courts, permitting a recovery for an invasion of the so-called right of privacy. Unless controlled by some independent consideration (*Peck v. Tribune Co.*, 214 U. S. 185; *Foster-Milburn Co. v. Chinn*, 134 Ky. 424, 120 S. W. 364, 135 Am. St. 417; *Atkinson v. Doherty & Co.*, 121 Mich. 372, 80 N. W. 285, 80 Am. St. 507, 46 L. R. A. 219), it has been generally held that there is no such right. *Roberson v. Rochester Folding-Box Co.*, 171 N. Y. 538, 64 N. E. 442, 89 Am. St. 828, 59 L. R. A. 478; *Henry v. Cherry & Webb*, 30 R. I. 13, 73 Atl. 97, 136 Am. St. 928, 24 L. R. A. (N. S.) 991; 3 Northwestern Law Review, p. 1. Not so much because a primary right may not exist, but because, in the absence of a statute, no fixed line between public and private character can be drawn. These authorities seem to be supported by the better reason, although the subject has been discussed instructively in the following articles and decisions: *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S. E. 68, 106 Am. St. 104, 69 L. R. A. 101; *Corliss v. Walker Co.*, 64 Fed. 280, 31 L. R. A. 283; *Von Thordorovich v. Josef Beneficial Ass'n*, 154 Fed. 912; 4 Harvard Law Review, p. 193.

The defense in this case is purely technical, a call to precedent as it has been established. A wrong is admitted, but it is said there is no remedy. We regret to say that this position is well taken.

"We do not wish to be understood as belittling the complaint. We have no reason to doubt the feeling of annoyance alleged. Indeed, we sympathize with it, and marvel at the impertinence that does not respect it. We can only say that

it is one of the ills that, under the law, cannot be redressed."
*Atkinson v. Doherty & Co., supra.*

This case presents a subject for legislation, and to the
legislative body an appeal might be so framed that in the
future the names of the innocent and unoffending, as well as
their likenesses, shall not be linked with those whose rela-
tions to the public have made them and their reputations, in
a sense, the common property of men.

Judgment affirmed.

Dunbar, C. J., Crow, Morris, and Ellis, JJ., concur.