[No. 30125. Department Two. February 27, 1947.]

W. S. Lewis *et al., Appellants,* v. Physicians and Dentists Credit Bureau, Inc., *Respondent.*[1]

*Fred T. Smart,* for appellants.

*Simmons & McCann,* for respondent.

Hill, J.—This appeal is from an order sustaining a demurrer to the appellants' complaint and from an order of dismissal based thereon.

The gist of the complaint is that the respondent was the assignee of a claim against the appellants for an unpaid doctor bill; that appellants advised respondent that they assumed no liability for said account; and, in paragraph 7 of the complaint, it is alleged that respondent

" . . . called up the office of plaintiff [appellant] wife's employer by telephone and informed said employer that plaintiffs owed a bill and account and was refusing to

[1] Reported in 177 P. (2d) 896.

satisfy or pay the same, and that the defendant [respondent] would institute proceedings to garnishee the wages of said plaintiff wife owed to her by the employer."

Appellants do not contend that the complaint states a cause of action in slander, but they take the position that it does state a cause of action for violation of their right of privacy. In their brief they state that there are three questions involved:

"1. Does the right of privacy exist? 2. If the right exists, do the acts alleged in Paragraph 7 of the complaint constitute a violation of that right? 3. If the right exists and the act[s] constitute a violation of it, must there be an allegation of special damage to state a cause of action?"

We do not find it necessary to answer the first and third questions, because our answer to the second question is in the negative.

This seems to be the first time since 1915 that the question of the right of privacy has been directly raised in this court. A brief statement as to the rule and its status is necessary to an understanding of our ruling on the second question quoted above.

The earliest discussion of the right of privacy, at least by that name, is contained in an article by Samuel D. Warren and Louis Brandeis, published in 1890 in the Harvard Law Review. It frequently is defined as the right to be let alone. The author of the annotation in 138 A. L. R. 25, offers the following as a fairly comprehensive definition of what constitutes an actionable invasion of the right of privacy:

"The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities."

The same annotator also says:

"The types of cases in which the right of privacy has been recognized vary so widely that it might be concluded that this supposed right is nothing more than a catch-all to take care of the outer fringes of tort and contractual

liability, and that it is not the product of any underlying general principle. The typical privacy cases are those involving the display, sale, or publication of one's portrait, the public use of one's name, oppressive publicity in connection with the collection of debts, and wire-tapping and other forms of eavesdropping. Superficially, these cases may seem to involve entirely different principles and considerations. Yet, there is a pervading element, common to all the cases, of outraging one's feelings by depriving him of the privacy which most normal persons desire and have a right to demand, whether this deprivation is effected by publishing one's name or picture in an advertisement or by tapping one's telephone line or installing a detectaphone so as to listen secretly to one's conversations with family or friends."

Fifty-six years after its conception, the cases dealing with the right of privacy are relatively few in number, and, in a majority of the states, even the existence of the right is still an open question.

This court has, so far as we have been able to determine, made but two references to the right of privacy. The first of these was in 1911, in the case of *Hillman v. Star Pub. Co.,* 64 Wash. 691, 117 Pac. 594, 35 L. R. A. (N.S.) 595, in which the plaintiff sued for damages because the defendant had, in connection with an article concerning an indictment of one C. D. Hillman for certain alleged real estate frauds, also published the picture of C. D. Hillman and his family, including the plaintiff. The demurrer was sustained and the action dismissed. An appeal resulted in an affirmance by this court. It was contended that a right of recovery could be sustained on the grounds (a) that the article was libelous, or (b) that it was an invasion of her right of privacy. In discussing the latter contention, the court referred to the article of Warren and Brandeis, *supra,* recognized that there was a diversity of authority, and adopted the rule laid down in *Roberson v. Rochester Folding-Box Co.,* 171 N. Y. 538, 64 N. E. 442, 89 Am. St. 828, 59 L. R. A. 478; and *Henry v. Cherry & Webb,* 30 R. I. 13, 73 Atl. 97, 136 Am. St. 928, 24 L. R. A. (N.S.) 991, denying any legally enforcible right of privacy. It was said that these authorities seemed to be supported by the better reasoning.

Immediately following the New York decision referred to, the legislature of that state enacted a statute giving a right of action to one whose name or picture is used, without his written consent, for the purposes of advertising or trade.

This court suggested the desirability of some legislative action when it said, in concluding its opinion in the *Hillman* case, *supra*:

"A wrong is admitted, but it is said there is no remedy. We regret to say that this position is well taken.

" 'We do not wish to be understood as belittling the complaint. We have no reason to doubt the feeling of annoyance alleged. Indeed, we sympathize with it, and marvel at the impertinence that does not respect it. We can only say that it is one of the ills that, under the law, cannot be redressed.' *Atkinson v. Doherty & Co., supra.* [121 Mich. 372, 80 N. W. 285, 80 Am. St. 507, 46 L. R. A. 219.]

"This case presents a subject for legislation, and to the legislative body an appeal might be so framed that in the future the names of the innocent and unoffending, as well as their likenesses, shall not be linked with those whose relations to the public have made them and their reputations, in a sense, the common property of men."

Again, in 1915, there was discussion of the right of privacy, in *Hodgeman v. Olsen*, 86 Wash. 615, 150 Pac. 1122, L. R. A. 1916A, 739. In that case the plaintiff, a former prisoner at the state reformatory at Monroe who had been pardoned, sought to compel the destruction of certain pictures held by the defendant, as superintendent of the reformatory, and to enjoin their retention and circulation. A demurrer was sustained and the action dismissed. An appeal resulted in an affirmance. In the course of the opinion, it was said:

"The right of privacy, upon which the appellant insists, if it has any existence in this state, is not invaded by such distribution. As intimated in the last paragraph of the opinion in *Hillman v. Star Publishing Co.*, 64 Wash. 691, 117 Pac. 594, 35 L. R. A. (N. S.) 595, the relation to the public of one who has been convicted of crime is such as to forfeit whatever right of privacy he may be said to have ever possessed. This is true, at least, to the extent that the protection of society requires such forfeiture. See *Molineux v. Collins, supra.* But it does not follow that a wanton dis-

tribution of these pictures to persons other than police officers and the like, and for no other purpose than to harass a pardoned criminal and injure him in his business, might not constitute a wrong, an excess of official duty or privilege, for which some remedy might be found."

In 1924, Senator Robert M. LaFollette secured a writ of mandate from this court prohibiting the use of his name in the designation of a political party calling itself the "LaFollette State Party." *State ex rel. LaFollette v. Hinkle,* 131 Wash. 86, 229 Pac. 317. In granting the writ, this court said:

"Nothing so exclusively belongs to a man or is so personal and valuable to him as his name. His reputation and the character he has built up are inseparably connected with it. Others can have no right to use it without his express consent, and he has a right to go into any court at any time to enjoin or prohibit any unauthorized use of it. Nor is it necessary that it be alleged or proved that such unauthorized use will damage him. This the law will presume."

No mention is made of the right of privacy in the course of the opinion, but various annotators have considered that this was at least an inferential recognition of the existence of the right.

The case of *Stiles v. Pantages Theatre Co.,* 152 Wash. 626, 279 Pac. 112, cited by appellant, has no applicability. A girl was suing for damages for mental suffering caused by her exclusion from participation in a motion picture contest. She was complaining, not of an invasion of her right of privacy, but of being deprived of her right to publicity. In that case, the trial court had granted a judgment for the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff. An appeal to this court resulted in an affirmance, and Justice Parker, in speaking for the court, said:

"It seems clear to us, in the light of our prior holdings, that mere mental suffering resulting from the act of another which is not wilful, in the sense of being malicious, such act being unaccompanied by physical injury caused at the same time, is not ground for recovery of damages. The law upon this subject has been reviewed in a number of our decisions and announced in substance as thus stated.

See, *Corcoran v. Postal Telegraph-Cable Co.*, 80 Wash. 570, 142 Pac. 29, L. R. A. 1915B 522; *Kneass v. Cremation Society*, 103 Wash. 521, 175 Pac. 172, 10 A. L. R. 442; *Barnes v. Bickle*, 111 Wash. 133, 189 Pac. 998; *Gadbury v. Bleitz*, 133 Wash. 134, 233 Pac. 299."

■ The complaint in this case alleges that the acts of the respondent were done "wickedly and maliciously." Appellants, therefore, rely upon the *Stiles* case, *supra,* by reason of the implication in the language of the decision that there might be a recovery for mental suffering, although unaccompanied by physical injury, if the action of the respondent had been malicious or wilful. The allegation of malice added nothing to the complaint here. The precise motives of the parties invading the right of privacy are unimportant in determining whether there is a right of action. *Sidis v. F-R Pub. Corp.*, 113 F. (2d) 806, 138 A. L. R. 15. And in the article by Warren and Brandeis above referred to, it is said:

"Personal ill-will is not an ingredient of the offense, any more than in an ordinary case of trespass to person or to property." 4 Harv. L. Rev. 218.

■ It is not necessary to answer appellants' first question as to whether or not a right of privacy exists, or to align this court definitely with either those who do, or those who do not, recognize the existence of the right of privacy. We merely hold that, if the right of privacy has any existence in this state, the conduct of the respondent as set forth in the complaint does not constitute a violation thereof.

In this case, the fact relied upon to constitute an invasion of the appellants' right of privacy is that the respondent telephoned the employer of the appellant wife and advised him that appellants owed a bill and were refusing to pay the same, and that respondent would garnishee her wages. We find no case holding that such a telephone call would be an actionable invasion of a person's right of privacy. None of the cases cited by appellants are, in any respect, comparable to the situation here. While recovery has been permitted (and likewise refused) for the giving of "undue

or oppressive publicity" to private debts, in most instances it has been because of a conspicuous posting, or publication in a newspaper. In every case that we have found, there has been a writing involved. Warren and Brandeis recognize that:

"The law would probably not grant any redress for the invasion of privacy by oral publication in the absence of special damage." 4 Harv. L. Rev. 217.

Judge Merrick, in an opinion rendered in the case of *Martin v. F I Y Theatre Co.,* 26 Ohio Law Abstract 67, states:

"In the absence of any Ohio case on the subject, and, after a careful perusal of all other available authorities, this court is of the opinion that a few general principles might be expounded on this question: . . .
"E. It cannot be violated under any circumstances by the spoken word."

■ The complaint herein contains no allegation that the appellants did not owe the bill which the respondent was endeavoring to collect; they content themselves with the allegation that they notified respondent that they assumed no liability for the account. A creditor or an assignee has a right to urge payment of a just debt, and to threaten to resort to proper legal procedure to enforce such payment. People who do not pay their bills cannot object to some publicity in connection with attempts to collect them; their tender sensibilities are protected only from "undue or oppressive publicity." A single telephone call to an employer, advising that a certain employee owed a bill and was refusing to pay the same and that the creditor, or his assignee, intended to start proceedings and garnishee the employee's wages, would not constitute either "undue" or "oppressive" publicity and would not be an actionable violation of such employee's right of privacy.

The demurrer to appellants' complaint was properly sustained, and the judgment of dismissal is affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.