155 So.2d 909 (1963)
Jimmie H. PACK, Plaintiff-Appellant,
v.
Erbon W. WISE et al., Defendants-Appellees.
No. 913.
Court of Appeal of Louisiana, Third Circuit.
July 15, 1963.
Rehearing Denied September 5, 1963.
Dissenting Opinion September 12, 1963.
*910 Watson & Watson, by Jack C. Watson, Lake Charles, for plaintiff-appellant.
John Makar, Natchitoches, for defendants-appellees.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
We are here concerned with the liability in tort, if any, of a creditor who attempted to secure the payment of a disputed debt by contacting the employer of the alleged debtor. The employee, who was subsequently discharged, sues the creditor to recover damages. He appeals from the dismissal of his suit by the trial court.
1. Facts.
The plaintiff Pack was an employee of a bank. Early in 1961 he became interested in securing a source of additional income by publishing a shopper news guide. Through a mutual friend, he contacted the defendant Wise, who was president and principal stockholder of Southwest Builder, Inc., a printing firm.
Pack secured an estimate of the printing costs at a first interview with Wise, made further inquiries at a second interview, and at a third interview introduced Wise to one Mannix, who was to serve as active manager of the enterprise. This was the extent of the plaintiff Pack's contacts with Wise prior to and during the period of the publication of the shoppers' guide.
In the meantime, Pack had become associated in the enterprise with Carroll Fogleman, an attorney who was a mutual friend of both Pack and the defendant Wise. Immediately before the first issue of the publication, however, the plaintiff Pack was informed by a superior in the bank that the bank did not approve of its employees engaging in active outside business activities, such as soliciting advertisements for the shoppers' guide.
Fogleman and Pack then employed Mannix to actively manage the publishing enterprise, and Fogleman informed Wise that he himself would see that any debts incurred by the business were paid. This all occurred prior to or at the time of the publication of the first issue of the enterprise in March of 1961. The enterprise was incorporated immediately after the second issue in April of 1961, with eighty per cent of the stock being issued to Fogleman and his wife (half of which was held by Fogleman for the plaintiff Packi. e., Pack owned a forty per cent interest in the corporation).
The enterprise immediately ran into financial difficulties. On June 5th, after the fifth issue, the corporation was reorganized with additional stockholders receiving a *911 portion of the stock. As a result, the plaintiff Pack's equity was reduced to twenty per cent. Fogleman further informed the defendant Wise that he himself would no longer be personally responsible for the debts of the corporation.
The reorganized management of the corporation published approximately four more issues before it finally ceased operations, with the last number issued approximately on August 1st.
A printing debt of $920 was due Southwest Builder, Inc., the firm managed by Wise, after the shoppers' guide concluded its operations. All of this debt was due for the last five issues of the publication by the corporation, in which Pack owned only a twenty per cent equity. The evidence clearly and without contradiction shows that Pack had disassociated himself entirely from active participation in the enterprise following publication of the first number on March 28, 1961; although it likewise indicates that Wise was not specifically informed that Pack had disassociated himself from personal responsibility for the enterprise. (On the other hand, Wise did know of the changes of active management following his first interview with Pack prior to the first issue.)
Immediately after the publishing operations of the shoppers' guide terminated, the plaintiff Pack was promoted to branch bank manager by his employer.
Wise, who was the effective owner and the president of two publishing corporations doing a large volume of business with the parent bank, wrote its president on September 5, 1961, to the effect that he, Wise, had been unsuccessful in collecting a past due printing account in the amount of $920 from Pack and concluding: "We dislike having to bring this to your attention and do so only because of the unsatisfactory response we get from Mr. Pack. We will greatly appreciate any assistance you may care to give us in securing payment so that we will not have to proceed further against Mr. Pack."
When the letter was received the following day, Pack was called into the office of the bank's executive vice-president. Pack explained that the debt was not his personally but was instead that of a corporation in which he was only a minority stockholder.
Accordingly, the president of the bank wrote Wise a letter on September 7th informing the latter of Pack's contention and stating that Pack contended he did not "have anything to do with creating the indebtedness." (Italics ours.) The letter concluded: "If Pack misrepresented the facts, I would appreciate hearing from you further on the matter; otherwise, no action will be taken against Jimmy by this institution."
Wise thereupon called the bank president and informed him of his version of the transaction, which placed heavy emphasis upon the undoubtedly truthful fact that initially (before publication of the first number) Pack had been the moving spirit in the publishing venture. Consequently, Pack was called in again that day by the bank's executive vice-president and was told by that official that he had heard enough of the matter and that he wanted it to be settled.
Thereupon, Pack had his attorney write a letter on September 18, 1961, requesting that Wise cease from communicating with Pack's employer concerning the matter. The letter concluded with the warning that "if such communications continue, then necessary legal proceedings will be instituted and you will be held financially responsible for all damages sustained * * *."
Upon receipt of this letter, Wise immediately brought it to the bank president. Pack was immediately sent for and questioned by the bank's president in a face-to-face confrontation between Pack and Wise, with the bank's executive vice-president present during at least part of this interview. Pack was immediately fired as a result of this conference.
*912 2. The question of Pack's liability to Southwest Builder, Inc
The present suit by the plaintiff Pack concerns his alleged right to recover damages against the defendant Wise arising out of the latter's wrongful coercion in attempting to collect the disputed debt. As we shortly demonstrate, it is actually not decisive of the present suit whether or not Pack would have been held liable for the corporate debt, if this were a suit to recover for the debt. (No suit has ever been brought to recover from Pack individually for this debt.)
In urging that he is not individually liable, the plaintiff Pack, of course, relies upon the well-settled principle that a corporate official agent is ordinarily not liable individually for corporate debts (Air Waves, Inc. v. Link, La.App. 1 Cir., 89 So.2d 422; Orleans Shoring Company v. DeVillentroy, La.App.Orl., 92 So.2d 274; La Parie v. Totora, La.App.Orl., 62 So.2d 658), nor is a stockholder (LSA-R.S. 12:19B). On the other hand, the defendant Wise claims that Pack is nevertheless liable to him for this corporate debt because credit had initially been extended to Pack individually, and the creditor had never been formally notified of Pack's withdrawal from the management of the enterprise and of the intended substitution of the corporation for him as the debtor for the printing of the subsequent issues. Hayes v. Claterbaugh, La.App.Orl., 140 So.2d 737; Jahncke Service v. Heaslip, La.App.Orl., 76 So.2d 463.
Whether Wise was entitled to rely on Pack's continued personal responsibility for the enterprise might be considered a very close question, since he was informed of Fogleman's personal guarantee when the first number was published, and in view of the information informally gained by him during publication activities, of the subsequent changes of management following his initial contact with Pack. We do not, however, feel obliged to pass upon this question, for reasons to be stated below.
Our principal reason in stating so fully the facts concerning the disputed debt is to show clearly both that Wise was without malice and was not unreasonable in claiming that Pack was liable individually for this debt of the publishing firm of which he was only a stockholder, and also to show that Pack was not mendacious, unreasonable, or frivolous in claiming to his bank superiors, when questioned by them, that he was not personally liable for what was undoubtedly the debt of a corporation with which his only connection was to own twenty per cent of the stock at the time of the creation of the debt of $920 which Wise was attempting to collect.
3. Tort liability for Wise's actions.
In a comprehensive opinion, our trial brother first held that Pack was indeed individually liable for the corporate debt, as Wise contended all along. Having so held, the trial court opinion further held that Wise's actions in telling the bank of Pack's just debt and in attempting to secure the bank's assistance in collecting it from Pack, were not unreasonable, especially since the bank had an interest in the matter, because a suit against one of its branch managers to some extent could reflect also upon the institution.
We think our trial brother fell into error in assuming that, even if the debt were justly owed, the creditor had a legal right to coerce the employee into paying it by pressure brought upon him through the employer, at least to the extent here demonstrated.
Whether or not a debt is justly due, the law recognizes a right in a debtor to be free from unreasonable coercion and also to be free from unreasonable violations of his right to privacy in his personal affairs, and the debtor is entitled to general and special damages in tort for violations of his rights in these regards. Tuyes v. Chambers, 144 La. 723, 81 So. 265; Quina v. Roberts, La.App.Orl., 16 So.2d 558.
*913 See also: Annotation, "Right of privacy", 138 A.L.R. 22 (Section 11c "Attempts to collect debt"), supplemented at 168 A.L. R. 466 (Section 11c), and 14 A.L.R.2nd 750 (Section 19); Annotation, "Right of action for damages because of methods used in attempting to collect debt", 55 A.L.R. 971, supplemented at 106 A.L.R. 1453; Annotation, "Right of debtor to recover for mental pain and anguish caused by methods pursued by creditor * * *", 91 A. L.R. 1495, supplementing earlier annotations to this effect; Prosser on Torts (2d Ed., 1955), Sections 38 and 97; 77 C.J.S. Right of Privacy § 2, p. 400; 41 Am.Jur. Privacy, Section 30, p. 947.
In Quina v. Roberts, cited above, an employee was held to be entitled to recover damages from a creditor which had written to the debtor's employer requesting the latter's assistance in collecting the balance due on a small debt. The court noted that an examination of the letter and enclosure sent to the employer was "sufficient to warrant the conclusion that it was issued with the intention of invoking his [the employer's] influence and control over the plaintiff as a means of forcing the latter, through fear of discharge or otherwise, to liquidate the small balance of his indebtedness."
In holding the creditor liable, Judge (now Justice) McCaleb, the organ of the court, stated: "It is manifest to us that the issuance of the letter and enclosure in this case, for the obvious purpose and design of forcing a payment by plaintiff, constituted a tort under our law and that plaintiff is entitled to redress even though he was unable to prove special damage", 16 So.2d 560. The organ of the court also commented that "it made no difference whether the money was legally due or not", 16 So.2d 561.
The opinion notes that the classification of the conduct in question as an actionable tort is based upon at least two grounds. These grounds, which are not necessarily either interdependent or exclusive of one another, consist (a) of an unreasonable invasion of another's right to privacy (see Restatement of Torts, Section 867), and (b) of the intentional causing of unreasonable emotional disturbance of another (see Restatement, Section 46, as amended in 1947), such as by coercive tactics "tantamount to an attempt on the part of the creditor to extort money from the plaintiff [debtor]", Quina v. Roberts, cited above, at 16 So.2d 561.
Aside from communicating directly with a debtor's employer, Louisiana law clearly recognizes that coercive tactics to collect a debt by themselves constitute a tort, Tuyes v. Chambers, 144 La. 723, 81 So. 265, as well as that an unreasonable invasion of a person's right to privacy is actionable, even if non-malicious, Hamilton v. Lumbermen's Mut. Cas. Co., La.App. 1 Cir., 82 So.2d 61, certiorari denied. (The right of privacy has been variously defined as "the right to be let alone" and as part of "the general right of immunity of the person", "the right to an `inviolate personality'", a violation of which right is "a direct invasion of the legal right of the individual", 82 So.2d 63.)
Recently, where a creditor telephoned members of a debtor's family in an effort to coerce payment, the Supreme Court of Alabama held that such conduct constituted an actionable invasion of the debtor's right to privacy. Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321. The court reviewed the jurisprudence relating to the question fairly comprehensively, pointing out for example several decisions of other jurisdictions which had held that the mere contacting of a debtor's employer does not necessarily constitute an actionable tort.
The court held that a rule of reason should be adopted to balance the interest of the creditor in collecting the debt against the right of privacy of a debtor as to his own affairs. This rule the Alabama court summarized as follows, 132 So.2d 323, "`a creditor has a right to take reasonable action to pursue his debtor and persuade *914 payment, although the steps taken may result to a certain degree in the invasion of the debtor's right of privacy,' but that the debtor has a cause of action for injurious conduct on the part of the creditor which exceeds the bounds of reasonableness."
Thus, assuming that the simple action of contacting a debtor's employer is not actionable in Louisiana as coercive in itself (but see Quina v. Roberts), it might well be argued that the defendant Wise's actions in writing the initial letter and in following it up with an explanatory telephone call in response to the bank's reply to his initial letter did not by themselves constitute conduct on his part unreasonably violating the plaintiff's right to privacy. However, we think that, in cumulation with his past conduct, Wise plainly committed an actionable tort when, in addition to the two prior contacts with the plaintiff's employer, he further brought to the bank's attention the letter to him of September 18th from the plaintiff's lawyer.
This letter expressly and formally informed him of the plaintiff's defense to any claim against him individually for the corporate debt, and it expressly informed him that the plaintiff did not desire any more intrusions by Wise into the relationship between the plaintiff and his employer. At the time he brought this letter to the plaintiff's employer, Wise was thus plainly put on notice that the plaintiff Pack felt he had a valid defense at law to Wise's claim that Pack was individually liable for the corporate debt. Instead of filing suit to secure a judicial adjudication of the validity of this defense, the creditor instead brought to the attention of Pack's employer the letter from Pack's attorney requesting the creditor to desist from further communications with Pack's employer about the matter.
In doing so, we think Wise's conduct, in cumulation with his past efforts to secure the bank's assistance in collecting from an employee a debt he disputed as due, exceeded what might have been within reasonable bounds in communicating with the employer about its employee's private affairs. Wise's action in this regard constituted either an invitation to the bank to take disciplinary action against its employee for his securing the services of an attorney to prevent further repeated and continued harassment concerning the disputed debt through the creditor's contacting the employer; or else Wise's action may have constituted further action by Wise to coerce the payment of a debt which the employee felt he did not owe. In either event, Wise's conduct constituted an unreasonable violation of the plaintiff's right to privacy or a tortious attempt to coerce Pack into paying the disputed debtin short, the commission by Wise of a tort against Pack.
Before proceeding to a discussion of the other legal issues, we should note that the record clearly shows that the defendant Wise is a very high type of individual who was not motivated by any malicious motive in the matter, but rather by the righteous and firm conviction that Pack was liable for the debt and should pay it. On the other hand, although his motive may not have been to coerce Pack into paying a debt Pack did not owe, nevertheless, as the record shows, Wise was a valued and influential customer of the bank, as a consequence of which his actions in repeatedly contacting this employer undoubtedly had a coercive effect. In fact, the plaintiff's superior informed Pack as a result of Wise's first two contacts that this superior wanted the debt to be settled and did not want to be bothered about it again, which (even if unintended as such) was tantamount to an instruction to see that the debt was settled whether or not Pack was liable for it.
4. Liability individually of Wise and/or his corporations
The debt of $920 was due to The Southwest Buillder, Inc., a corporation of which Wise was president and owned most of the stock. The evidence clearly indicates that *915 Wise's actions to collect this debt were done on behalf of this corporation.
However, the present suit was not brought against this corporation. Instead, the plaintiff sued both Wise individually and also Wise Publications, Inc., another publishing corporation managed and mostly owned by Wise. This latter corporation was impleaded because Wise had used its stationery (rather than that of Southwest Builder, Inc.) in his initial letter to the plaintiff's employer.
The defendant's able counsel contends that Wise is not individually liable for a tort committed by him in the course of his duties as a corporate officer. However, it is settled that the aggrieved party has a cause of action in such instances both against the corporate officer individually who committed the tort, as well as against the corporation which is responsible for his acts. Wisemore v. First National Life Ins. Co., 190 La. 1011, 183 So. 247; Adams v. Fidelity & Cas. Co., La.App. 1 Cir., 107 So.2d 496; 19 C.J.S. Corporations § 845 p. 271. Wise is therefore personally liable for the tort herein committed.
As to the liability of Wise Publications, Inc., the other corporation made defendant, the evidence clearly shows that Wise's actions concerning the debt were not in the course and scope or within his ostensible authority as an officer of such corporation, which was not at all concerned with the debt of $920 (which was owed instead to Southwest Builder, Inc., another corporation managed by Wise). Although the use of the corporate letterhead by a corporate officer may raise the presumption that the officer is acting on behalf of the corporation (see 3 C.J.S. Agency § 324e, p. 288), we are cited to no authority to the effect that a corporation can be held liable on the naked ground that its corporate officer inadvertently or improperly used the corporate stationery. We therefore affirm the action of the trial court in dismissing the suit insofar as Wise Publications, Inc., is concerned.
5. Damages.
As stated in Quina v. Roberts, cited above, in allowing recovery for a similar tort, "Article 2315 of our Code is broad in its scope and contemplates redress to all who suffer injury as a consequence of a commission of an offense or quasi-offense. This includes recovery for mental pain and anguish for which compensatory damages will be awarded * * *."
In the present instance, prior to the transaction in question, the plaintiff Pack had an unblemished record as an outstanding and promising young man. Five years after he was employed by his bank, he had been promoted to branch bank manager. The evidence reflects that he was active in civic affairs and highly regarded in his community.
Although the defendant contends that Pack was fired solely because in his initial interviews with his bank superiors he had misrepresented the extent of his participation in the publishing enterprise, we think the evidence clearly reflects that his bank superiors also fired him because, instead of following their instructions to settle the debt claimed by Mr. Wise on a satisfactory basis, he had acted contrary to their instructions and had obtained legal representation. See Tr. 113D, Tr. 31 (Interrogatory 21), Tr. 37 (Interrogatory 17).
For instance, a few days after Pack was discharged, the bank's executive vice-president prepared a memorandum concerning the incident for the bank's records. This memorandum of October 5, 1961, concludes: "* * * Mr. Pack's services for our bank were discontinued primarily on the grounds that instead of doing as requested and settling the matter on what we would term a satisfactory basis, he had used poor judgment in acting contrary to our wishes and advice, and obtained legal representation." Tr. 113D. In our opinion, this official's testimony at the trial some sixteen months later does not substantially differ from his recollection of the facts as set forth in his *916 memorandum prepared a few days after the incident.
(As to the alleged misrepresentation, we think it is manifest that the apparent variance between Wise's and Pack's versions of the debt resulted from Wise's emphasis on the earlier pre-publication negotiations in which Pack had played an active part, while Pack's version related solely to his non-participation in the corporate affairs as a minority stockholder at the time the $920 debt was created for the printing of the last few issues.)
After losing his job, Pack was unable to secure another for approximately six weeks. As a result of being fired, he suffered at least a temporary loss of self-esteem and of general reputation. Fortunately, starting with lower pay, within a relatively short time he was able to enjoy earnings equivalent to those which he enjoyed at the time of his discharge.
Nevertheless, he is entitled to an award for the tortious invasion of his privacy and the improper coercion, causing him the loss of his job and some damage (mostly temporary) to his reputation, as well as for the mental pain and suffering and anxiety resulting from his being discharged because of the defendant's tort and being without work for about six weeks, unable to support himself and his wife and four children.
Considering that the plaintiff lost approximately two thousand dollars in earnings as the result of the defendant's tort, we think that an award of five thousand dollars in all, for both special and general damages, will be fair and proper under all the circumstances reflected by the record. See, e. g., Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222; Hamilton v. Lumbermen's Mut. Cas. Co., La.App. 1 Cir., 82 So.2d 61.

Decree.
For the foregoing reasons, the judgment of the trial court is affirmed insofar as it dismissed the plaintiff's suit against Wise Publications, Inc.; it is reversed and set aside insofar as it dismissed the plaintiff's claim against the defendant Erbon W. Wise individually; and judgment is now rendered in favor of Jimmie H. Pack and against Erbon W. Wise in the amount of Five Thousand Dollars ($5,000), together with legal interest from the date of judicial demand until paid. The defendant Wise is taxed with all costs of these proceedings and of this appeal.
Affirmed in part; reversed in part.
SAVOY, J., dissents being of the opinion that the judgment of the district judge is correct.

On Application for Rehearing
En Banc. Rehearing denied.
HOOD, Judge (dissenting).
In my opinion the majority erred in its interpretation of the law applicable to this case.
There is no dispute as to the facts. The evidence shows beyond any question, I think, that Pack was personally obligated to Wise's publishing company for this $920.00 debt. Wise contacted Pack about the debt several times, and although Pack promised in a telephone conversation that Wise would be the first creditor to be paid "as the money came in," no payments were made on the delinquent account, and Pack failed to show up for an appointment which he and Wise had agreed upon to discuss the indebtedness. Wise then wrote to Mr. Robert L. James, president of the bank where Pack was employed, on September 5, 1961, informing him of the indebtedness and requesting his assistance in securing payment. The letter written by Wise was courteous and confidential, it was free from any false, slanderous, defamatory or derogatory statements about Pack or anyone else, and it contained no threats, hints or suggestions of any kind which *917 could possibly be interpreted as coercive matter.
Upon receipt of this letter Mr. James discussed the matter with Pack, and in that discussion Pack made false statements to his employer about his connection with the indebtedness, and he implied that Wise had been dishonest or insincere in asserting that there was liability on the part of Pack. The bank president then wrote to Wise on September 7, informing him that Pack "had an entirely different version of the indebtedness," and that Pack had informed him that Wise "knew perfectly well" that no such debt was due. The bank president expressed some indignation over the fact that Wise had written such a letter, and concluded by stating, "If Pack misrepresented the facts I would appreciate hearing from you further on the matter; otherwise, no action will be taken against Jimmy by this institution."
When Wise received this letter informing him of the false and derogatory statements which Pack had made about him, he promptly telephoned Mr. James, as he had been specifically requested to do, giving him the true facts. Pack was then called in by the executive vice-president of the bank and at that time he again made substantially the same untrue statements to that official about the indebtedness and Wise as he had made previously. The executive vice-president of the bank then told Pack that they had heard all they wanted to hear about the matter and that they wanted him and his associates to get together and settle it.
Pack did not comply with the instructions of his employer, but instead he employed legal counsel who wrote to Wise informing him that the latter had made "certain libelous and defamatory remarks" about Pack, and that Pack "has a cause of action against you for the libelous and defamatory remarks." The attorney then concluded by stating that rather than initiate court action, Pack preferred to request that Wise cease from communicating with the bank about the matter, and that legal proceedings would be instituted if such communications continued. Wise then showed this letter to the bank president who called Pack in and discussed the matter again with him in the presence of Wise. During that conference it was determined by the president and executive vice-president of the bank that the statements which Pack had previously made relating to his transactions with Wise were false, that Wise's version of the facts was true, and that Pack was indebted to Wise for the amount claimed. The president of the bank then promptly discharged Pack from his employment by that institution.
The bank president testified that Pack was not dismissed because of Wise's letter, but that "He was dismissed because of his failure to comply with the instructions of a senior officer of the Bank," and because of "making misstatements to officials of the Bank." He further testified that if Pack had told the truth on the first occasion he was called in he probably would still be with with the bank. He also testified that his "confidence in the integrity of Mr. Wise was shaken" by the false statements made to him by Pack, and that if Mr. Wise had not later corrected the misstatements which had been made by Pack he would have been discredited in the eyes of the bank president and the bank.
Under these facts the majority has concluded that Wise's conduct "constituted an unreasonable violation of the plaintiff's right to privacy or a tortious attempt to coerce Pack into paying the disputed debt," and for that he is liable to Pack for a substantial sum of money as damages. The majority does not mention the fact that in this suit Wise filed a reconventional demand against Pack for damages for the false and damaging remarks made about him by Pack, although the evidence shows that Pack's statements were false, and they would have seriously damaged Wise if the latter had not promptly contacted the persons to whom they were made and given them the true facts. Wise did not at any *918 time make a false or slanderous remark about Pack, and the evidence is uncontradicted to the effect that it was Pack's untruthful statements to his employer, and not Wise's communications, which caused Pack to be fired.
The majority has implied that the "pressure" or "coercion" brought against the bank president by Wise, who they describe as "a valued and influential customer of the bank," caused the bank president to fire Pack, the manager of one of its branch banks, for fear that if that was not done Wise might retaliate by withdrawing some of his business from the bank. It seems to me that the letter written by the bank official to Wise, in itself, clearly shows that the former was not intimidated, coerced or pressured by Wise into taking any action at all against Pack. On the contrary, after receiving the false reports from Pack the bank president flatly refused to do anything about the matter unless it was shown that Pack had misrepresented the facts. In speculating that the bank officers were afraid of losing business from Wise, I think the majority has overlooked the testimony of the officials of the bank to the effect that the bank was an advertising customer of Wise and a purchaser of the publications issued by his companies. The business relations between Wise and the bank certainly were as advantageous to Wise as they were to the bank, and it seems to me that it would be more logical to speculate that Wise would not want to coerce or antagonize the bank for fear that he would lose the bank as a customer.
In holding that Wise's conduct constituted "an unreasonable violation of the plaintiff's right to privacy," the majority relies upon the cases of Tuyes v. Chambers, 144 La. 723, 81 So. 265 (1919); Quina v. Roberts, La.App.Orl., 16 So.2d 558 (1944); Hamilton v. Lumbermen's Mutual Casualty Co., La.App. 1 Cir., 82 So.2d 61 (1955, Cert. denied); and the Alabama case of Norris v. Moskin Stores, Inc., 272 Ala. 174, 132 So.2d 321 (1961). In my opinion none of those cases is authority for the conclusions reached here.
In Tuyes v. Chambers, supra, for instance, the creditor (1) had made insulting and defamatory remarks about plaintiff in a number of public places, calling her a "deadbeat" and "no lady"; (2) had made similar remarks to plaintiff's daughter; (3) had printed and published plaintiff's name on a list of delinquent debtors; and (4) had threatened to place these lists of delinquent debtors in merchant's display windows and advertising the account for sale in newspapers. There is no similarity between the facts in that case and those in the instant suit.
In Quina v. Roberts, supra, plaintiff owed the defendant a debt of only $1.45. The defendant wrote to plaintiff's employer enclosing a document, drawn up on a printed legal form, entitled "Final Notice Before Suit," accompanied by an affidavit, stating that plaintiff was indebted to defendant for $14.95, or more than ten times the amount which was actually due. On the reverse side of the legal document there appeared "No. 5421," followed by the title, "Robert's Jewelry Store, creditor vs. Mr. A. J. Quina, debtor." The court found that this document had been prepared "in such a way so as to mislead the employer into believing that it was issued out of some official or legal channel and the amount claimed therein is admittedly incorrect." The use of this misleading document and the claim of considerably more than was due, all of which caused plaintiff humiliation and mental anguish, was held to be "unwarranted" and accordingly plaintiff was awarded $100.00 as damages. No misleading statements or documents were issued by plaintiff in the instant suit, and Wise claimed only the amount which was actually due by Pack.
The facts and issues presented in the Hamilton case, supra, are entirely different from those presented here, so clearly that case is not applicable. In Norris v. *919 Moskin Stores, Inc., supra, the creditor, in an attempt to collect a debt claimed to be owed by plaintiff, caused one of its female employees to call plaintiff's wife by telephone and to tell her (falsely) that her name was "Doris," that she had met and had dated plaintiff, and that it was very important that plaintiff call her at a telephone number which she left. Similar calls were made to other relatives of plaintiff. The court held that the actions of the creditor exceeded the "bounds of reasonableness." Certainly there is no similarity between that case and the one being considered here.
The correct rule, I think, is stated in 77 C.J.S. Right of Privacy § 2, page 401, as follows:
"It has been held that an employee has no right of privacy as against his employer in the matter of debts which the employee owes to third persons and * * * the creditor does not incur liability by communicating to the employer the fact of the existence of such debt, where the communication does not contain slanderous, libelous, defamatory, or coercive matter, even though, in the usual course of business, the communication may pass through the hands of other employees." (Emphasis added).
In 14 A.L.R.2d, Anno.-Right of Privacy, page 770, the following language is used:
"It is generally recognized that a creditor has a right to take reasonable action to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy. So, it has been held that an employer may be informed of a debt owed by one of his workers."
In Gouldman-Taber Pontiac v. Zerbst, 213 Ga. 682, 100 S.E.2d 881 (1957), the defendant-creditor wrote to the plaintiff-debtor's employer a letter similar to the one which Wise wrote to Pack's employer in this case. In holding that that letter did not constitute an invasion of the plaintiff's right of privacy, the court stated:
"Whether a letter written by a creditor to an employer notifying him that his employee is indebted to the creditor and seeking the employer's aid in the collection of the debt constitutes a violation of the right of privacy of the employee, is a question of first impression in this State. Courts of other jurisdictions in dealing with the question have generally held that such does not give a cause of action for a violation of the right of privacy, their reasoning being that, in giving this information to an employer, it was not giving to the general public information concerning a private matter in which it had, or could have, no legitimate interest, since an employer has a natural and proper interest in the debts of his employees. * * * Applying the principles * * * and definitions of the right of privacy of other jurisdictions quoted above, we are of the opinion that sending the letter in his case to the plaintiff's employer did not violate her right of privacy. The right of privacy is not absolute but is qualified by the rights of others. `No individual can live in an ivory tower and at the same time participate in society and expect complete non-interference from other members of the public.' * * * A recluse who completely extricated himself from society might well expect no interference whatever from the outside world. But one who, like the plaintiff, is employed by a large corporation, who is an active participant in the business world, who has an automobile and drives it upon the highways, has it serviced and repaired, and obtains credit for goods and services used in repairing her car, may expect reasonable conduct on the part of those with whom she does business and from whom she gets credit. Where she seeks and obtains credit from one such as the defendant, she *920 may expect the creditor to investigate her and her reputation, particularly for paying her bills, to ascertain for whom she works, and to communicate with her employer for information about her. She may expect her employer to want her to pay her bill, and may further expect her creditor to use reasonable means to persuade her to do so, and on failure to persuade to force her to do so through the courts. When she accepts the credit, she impliedly consents for her creditor to take all reasonable and necessary action to collect the bill. Writing to her employer, as this creditor did, was in our opinion a reasonable exercise of his rights and constituted no unwarranted or unreasonable interference with her right of privacy." (Emphasis added).
The facts in Patton v. Jacobs, 118 Ind. App. 358, 78 N.E.2d 789 (1948), are strikingly similar to those in the instant suit. In holding that there had been no invasion of plaintiff's right of privacy, the court said:
"* * * We think it sufficient to say that in most of the cases in which a recovery was permitted the actionable conduct of the creditor lay in the fact that he gave the general public information concerning a private matter in which it had, or could have, no legitimate interest, and did so in a manner that was coercive and oppressive. Frequently, except for the truth of the publication, the words and methods used would have given basis for a suit for libel or slander and carried to the public generally the inference that the complainant was a `dead beat,' habitually refused to pay his debts and was not entitled to financial credit.
"We find none of these elements in the case before us. * * * It must be borne in mind that an employer has a natural and proper interest in the facts relative to debts owed by his employees. He is subject to the expense and inconvenience of defending himself in garnishee proceedings wherein a percentage of his employees' wages may be taken to apply on such debts and thus additional and burdensome bookkeeping entries may be imposed upon him. He has the right to hire only those who pay their debts and may take a pardonable pride in the reputation of his employees in that respect. He is not in a category with the general public which cannot have any legitimate interest in a purely private matter between a creditor and a debtor. For the reasons above stated an employer has a right to know the status of the financial obligations of his employees and, while we cannot say that a creditor of an employee owes the employer a duty in that regard, it is difficult to follow a course of reasoning that concludes that the employee's right of privacy has been invaded by giving his employer information which the employer has a right to have. In other words an employee has no right of privacy as against his employer in the matter of the debts he owes and a creditor who gives such information to the employer, unaccompanied by slanderous, libelous, defamatory or coercive matter, incurs no liability in so doing. * * *" (Emphasis added).
In Yoder v. Smith, 253 Iowa 505, 112 N. W.2d 862 (1962), the Supreme Court held that:
"Almost all decisions on the point agree it is not an actionable invasion of a debtor's right of privacy for one, attempting to collect a bill, to communicate to the debtor's employer the fact of his debt."
Under facts similar to those in this suit, the Kentucky Court of Appeals, in Voneye v. Turner, 240 S.W.2d 588 (1951), held that there had been no invasion of the plaintiff's right of privacy. In so holding, the court said:
"The letter did not contain a threat or a coercive word, nor one word of *921 contempt, ridicule, aversion or disgrace. Ordinarily, an employer is interested in the ability and reputation of his employees as to payment of debts, which makes for efficiency in work and saves the employer the annoyance and expense of answering garnishments. So with reason it cannot be said this letter was directed to one who had no interest in or was not concerned with plaintiff's payment of his just and legal obligation. A debtor when he creates an obligation must know that his creditor expects to collect it, and the ordinary man realizes that most employers expect their employees to meet their obligations and that when they fall behind in so doing the employer may be asked to take the matter up with them. Indeed, most debtors would prefer to have their delinquencies referred to their employers in a courteous and inconspicuous manner rather than to have a suit filed against them and their wages garnisheed."
In Tuyes v. Chambers, supra, one of the cases on which the majority relies, our Supreme Court indicated that there must be a public exposure, causing humiliation, embarrassment or injury to plaintiff, before the latter may recover damages for invasion of privacy. The court said:
"* * * The publication of plaintiff's name on the list of delinquent debtors was but a part of the plan to extort from her the money which defendant contended was due. It was intended to impute to her an unwillingness and refusal to pay her just debts, and to destroy that reputation for integrity and fair dealing which every one is presumed to have until the contrary is shown. * * * We are convinced that the whole was a general scheme to force plaintiff to pay money, by threatening to humiliate her through public exposure, and that this was the underlying basis of the system * * *." (Emphasis added).
Other cases which I think are applicable and which clearly support the rule hereinabove set out are: Lewis v. Physicians and Dentists Credit Bureau, 27 Wash.2d 267, 177 P.2d 896 (1947); Housh v. Peth, 165 Ohio St. 35, 133 N.E.2d 340 (1956); Hawley v. Professional Credit Bureau, 345 Mich. 500, 76 N.W.2d 835 (1956); Lucas v. Moskins Stores, 262 S.W.2d 679 (Kentucky, 1953); Haggard v. Shaw, 100 Ga. App. 813, 112 S.E.2d 286 (1959); Davis v. General Finance & Thrift Corporation, 80 Ga.App. 708, 57 S.E.2d 225 (1950); and Tollefson v. Safeway Stores, Inc., 142 Colo. 442, 351 P.2d 274 (1960).
In my opinion the jurisprudence has been firmly established to the effect that before there can be a recovery of damages for invasion of the right of privacy in a case of this nature, that is, because of the disclosure by the defendant-creditor of the fact that the plaintiff-debtor owes such a debt, at least one of the following two circumstances must be established: (1) It must be shown that there was a public disclosure of the private facts, in which facts the general public has, or could have, no interest, and which public disclosure causes plaintiff to suffer humiliation, embarrassment, loss or injury; or (2) It must be established that the communication of such facts to third persons by the defendant-creditor contains false, slanderous, libelous, defamatory or coercive matters, or constitutes some breach of contract, trust or confidential relationship, which causes plaintiff to suffer loss or injury.
There is no "public disclosure," I think, unless the information is conveyed to the public generally, or to a number of people who have no real or legitimate interest in the matter, such as by publishing the fact in a newspaper, posting notices or statements to that effect in merchant's windows, stating it publicly to individuals or groups on the public streets or in public places, and by conveying the information in other ways which might reasonably be expected to subject the debtor to ridicule or disgrace in his community, or cause him to suffer injury *922 to his reputation for honesty, integrity or promptness in paying his debts. The employer of the plaintiff-debtor is an interested party, and he cannot properly be classified as a part of the general public which has, or could have, no legitimate interest in the matter. There is no liability on the part of the creditor, therefore, for communicating to the debtor's employer the fact that the indebtedness exists, or in requesting the assistance of the employer in bringing about a payment of the account, unless the communication contains slanderous, libelous, defamatory or coercive matters or unless there is a breach of some contract, trust or confidential relationship which causes the debtor to suffer loss or injury.
In the instant suit Wise has never made a slanderous, libelous or defamatory statement about Pack, there is not one scintilla of evidence which I think can possibly justify a conclusion that he coerced or pressured the bank officials into taking action against Pack, or that he intended or attempted to do so, and there has been no breach of any contractual, trust or confidential relationship between Pack and Wise.
Under these circumstances, I think the trial judge correctly rejected the demands of the plaintiff, and that the majority has erred in reversing that judgment. In my opinion, the majority opinion is contrary to all of the existing jurisprudence on this subject
For these reasons, I respectfully dissent from the refusal of the majority to grant a rehearing in this case.