HOOD, Judge.
This is a tort action instituted by United States Fidelity and Guaranty Company against Dave’s Flying Service, Inc., and its president, Sherman David Ledford. Plaintiff seeks reimbursement for the loss which it sustained when an aircraft hangar it had insured was destroyed by fire. Judgment was rendered by the trial court in favor of plaintiff and against Dave’s Flying Service, Inc., for the full amount claimed, but plaintiff’s demands against Ledford, individually, were rejected. Plaintiff has appealed from that part of the judgment which dismissed its action against Ledford.
The issues presented are: (1) Was Led-ford chargeable with independent negligence which caused or contributed to the fire loss, thus rendering him solidarily liable with the corporation for damages ? (2) If Ledford was not guilty of independent negligence, then was the defendant corporation the “alter ego” of Ledford, making the last named defendant personally liable for the torts or debts of the corporation?
On July 10, 1962, the Acadia Parish Police Jury leased to Dave’s Flying Service, Inc., an aircraft hangar and other airport facilities situated at the Legros Memorial Airport, near Estherwood, in Acadia Parish. Dave’s Flying Service was a small corporation, managed and almost totally owned by defendant Ledford. The principal business of the company was agricultural corp dusting. It maintained the lease and used the hangar from the date of the above mentioned lease until the building was destroyed by fire on July 31, 1965.
The hangar was about 100 by 100 feet in size, and there was a “lean-to” on one side of it, about 20 or 30 feet wide, which was used by the lessee for office space and a work shop. The office and work shop were separated from the rest of the hangar by a wall. There was a double door leading from the shop into the hangar, but the door was not large enough to permit a plane to be rolled through it. The corporation owned no airplanes, but a number of planes were usually kept in the hangar. There were about 18 planes in that building when the fire occurred, all of which were destroyed.
Shortly before the fire was discovered Gene Godeau, an employee of Dave’s Flying Service, washed and steam cleaned a Stearman biplane, which was owned personally by Ledford, to remove any oil which may have accumulated on the fuselage. He then rolled the plane inside the hangar to a place close to the wall which separated the hangar from the work shop, and while the plane was in that position Godeau proceeded to do some welding on the tail section of the plane. The welding was done with an acetylene torch connected by a long hose to a bottle located inside the shop. Ledford was in and around the premises while this repair work was being done on his plane. After Godeau had been welding on it for about thirty minutes, Ledford noticed that the front part of the plane was on fire, and he promptly warned Godeau of that fact. Godeau obtained a fire extinguisher immediately and attempted to use it to put out the fire, but the extinguisher would not operate. The danger of the fire spreading to the gasoline tanks became so eminent before another extinguisher could be obtained that at Ledford’s suggestion he and Godeau got out of the building, and shortly thereafter the hangar and all of the planes in it were destroyed by the fire.
The evidence does not show the exact cause of the fire. Ledford and Godeau testified that there were no visible signs of combustible substances on the hangar floor at the time the welding was done, and that they saw no flame on the floor of the building. Ledford stated that the fabric *254 wings of the plane were covered with “bu-tyrate dope” which will burn but "won’t burn fast like a fuel,” that “Varsol” (which we assume is not highly flammable), instead of gasoline, had been used to clean the wings of the plane, and that in welding the tail section of the plane Godeau was using a standard procedure which was approved by the Federal Aviation Administration.
Ledford and Godeau admitted, however, that the fuel tanks on all of the planes in the building, including the one which was being repaired, were loaded with gasoline, and that a “popping weld” could have caused a fire to start some distance away from the welding point. There is nothing in the evidence which indicates that the fire could have been caused by anything other than the welding.
.The fire extinguisher which Godeau attempted to use in putting out the fire did not function. Ledford testified that he owned and had furnished all of the fire extinguishers which are in the hangar, that the Police Jury “don’t furnish anything,” and that the extinguishers belonged to the corporation. He conceded that it is “standard procedure where you are doing work on an airplane with a welding torch that you should have workable fire extinguishers in place where they can be used to quench a fire if it develops.” He stated that he had several fire extinguishers at the place, and his only explanation as to why the one which was readily available when the fire started did not work was “it would be possible for somebody else to use an extinguisher, you know, and not repair it back or get it refilled.”
The evidence shows that Ledford was president of Dave’s Flying Service, Inc., when the fire occurred. He owned 98 of the 100 shares of stock which were issued by the corporation. No stockholders’ meetings were ever held, and it is apparent that Ledford was the sole manager and operator of the business of the company. Go-deau was employed by Ledford in 1959, and was still working for him when the hangar was destroyed by fire. Ledford testified that he was Godeau’s “superior” in the business of the corporation, and that when he told Godeau to do something he expected him to do it. Ledford was present while these welding operations were being conducted, and he, in fact, was the one who first discovered that the plane was on fire.
" The evidence convinces us that Ledford was supervising the work which was being performed by Godeau, that he was fully aware of the danger of welding around gasoline fuel tanks, that he knew that workable fire extinguishers should be readily available when work of that kind was being done, and that he had the power and authority to direct that the welding operations be conducted in a different manner.
The trial judge did not assign written reasons for judgment. He obviously concluded, however, that the fire was caused by some negligent act on the part of Go-deau, since judgment was rendered in favor of plaintiff and against the corporation. In view of the fact that Ledford was relieved of liability, it is apparent that the trial judge also concluded that defendant was not chargeable with independent negligence, and that the corporation was not the alter ego of Ledford.
The law is settled that if an officer or agent of a corporation commits a tortious act, whether or not that act is committed by or for the corporation, the officer or agent is liable personally to third persons who are injured thereby, and it does not matter what liability attaches to the corporation for the tort. If the corporation becomes liable also, because of the tort committed by an officer or agent of that corporation, then the individual and the corporation are solidarity liable for the damages resulting from that tort, and they may be joined as defendants. LSA-C.C. art. 2315; Pack v. Wise, 155 So.2d 909 (La. App. 3 Cir.1963); 19 Am.Jur.2d, Corporations, Sec. 1382.
*255 The evidence in the instant suit convinces us that defendant Ledford was negligent in permitting welding operations to be conducted by his employee, Godeau, inside the hangar, near loaded fuel tanks, with no workable fire extinguishers readily available at the place where the work was being performed. Ledford was fully aware of the danger, he was present while the work was being performed, he had the authority and the duty to require that the work be conducted in a safe manner, and he had ample time within which to take the needed precautions, the evidence indicating that the fire did not occur until about thirty minutes after the welding operations were begun.
We also find that Ledford was negligent in failing to determine before the fire occurred that the fire extinguisher located near the welding equipment was in workable condition. We do not feel that he can be exonerated from negligence simply because someone else may have used the extinguisher earlier and not re-filled it.
In our opinion, the negligence of Led-ford in the above mentioned particulars constituted a proximate cause of the accident and its resulting destruction of the hangar. We conclude therefore, that the trial judge erred in dismissing the suit as to Ledford.
Even though Ledford may have been acting for the corporation by providing the fire extinguishers and in supervising the welding operations, his acts nevertheless constituted independent negligence on his part. He thus is liable, individually and in solido with Dave’s Flying Service, Inc., for the damage occasioned by his tortious acts.
In view of our conclusion that Ledford is chargeable with independent negligence, it is unnecessary for us to consider or to determine whether the defendant corporation was the alter ego of Ledford.
For the reasons herein set out, that part of the judgment appealed from which dismissed this suit as to defendant Ledford and relieves him from the payment of costs is reversed. The remaining portion of the judgment, and particularly the decree in favor of plaintiff and against Dave’s Flying Service, Inc., is affirmed. The judgment appealed from is recast and rendered to decree that judgment is hereby rendered in favor of plaintiff, United States Fidelity and Guaranty Company, and against defendants, Dave’s Flying Service, Inc., and Sherman David Ledford, in solido, for the sum of $3,200.00, with interest thereon at the rate of five percent per annum from date of judicial demand, until paid, and for all costs of this suit. The costs of this appeal are assessed to defendants-appellees.
Reversed in part and affirmed in part.