376 So.2d 514 (1979)
Voncelle T. KLUMP
v.
SCHWEGMANN BROTHERS GIANT SUPERMARKETS, INC. et al.
No. 10619.
Court of Appeal of Louisiana, Fourth Circuit.
October 4, 1979.
Rehearing Denied November 19, 1979.
Writ Refused January 18, 1980.
*515 Leonard L. Levenson, Levenson & Bonin, New Orleans, for plaintiff.
C. Monk Simons, III, New Orleans, for defendants.
Before REDMANN, LEMMON and BOUTALL, JJ.
REDMANN, Judge.
Plaintiff appeals from a judgment rejecting her claim for damages from invasion of her privacy.
Plaintiff was an employee of a chain of bakeries, working in a bakery inside defendant's supermarket. Defendant had reason to suspect that plaintiff, while shopping in the supermarket, engaged with a stock clerk in a scheme to cheat it by repricing a $3 item to less than half price,[1] notwithstanding that, for whatever reason,[2] plaintiff did not actually buy the repriced item but removed it from her shopping cart before checking out.
Defendant detained and questioned plaintiff and, briefly, her alleged accomplice (who coincidentally injured his arm and was sent out for medical treatment). The accomplice said he had told plaintiff he changed the price, but plaintiff denied she knew anything about it. Defendant telephoned plaintiff's employer to advise it that plaintiff would no longer be allowed to work inside defendant's supermarket. (An official of defendant testified that defendant had the arrangement with other employers of persons who worked inside the store that defendant could veto employment in its store of any person in whom it "lost confidence.") The result was that plaintiff was fired.[3]
When plaintiff's alleged accomplice returned from the medical treatment, he told defendant's officials that plaintiff had had nothing to do with his practical joke of price-changing. Defendant did not notify plaintiff's employer of this fact, they say, because they had only notified the employer that they had "lost confidence" in plaintiff, and because her apparent accomplice's statement did not affect their position: they knew they could not have plaintiff arrested, but they did not want her working in their store because they had "lost confidence" in her.
We conclude that, under all the circumstances, defendant's conduct was not unreasonable notwithstanding that defendant might have protected itself more diplomatically by telling plaintiff herself to stay out of the store rather than notifying her employer that defendant did not want her in their store. Plaintiff argues only that defendant invaded her privacy by notifying her employer. If the employer's place of business were not situated inside the store we could agree, for then notifying the employer would not serve to protect defendant's interest but only to wreak vengeance, an act like summary punishment. But we conclude that under the circumstances defendant had a qualified privilege to communicate the events and to interfere with plaintiff's employment in order to fully protect defendant's own interests. See Carter *516 v. Catfish Cabin, La.App. 2 Cir. 1975, 316 So.2d 517. Moreover, unless a supermarket cannot exclude persons it has reasonable grounds to suspect of having conspired to steal from it, defendant could surely have excluded plaintiff and she would have lost her job in defendant's store in any case, and thus she was not damaged by defendant's direct notice to her employer.
This case is thus unlike Pack v. Wise, La.App. 3 Cir. 1963, 155 So.2d 909, where no similar relationship existed between defendant and plaintiff's employer. And it is unlike Love v. Southern Bell T. & T. Co., La.App. 1 Cir. 1972, 263 So.2d 460, writ refused 262 La. 1117, 266 So.2d 429, in which defendant employer's supervisors caused a locksmith to open plaintiff's home and twice entered it (the second time bringing an additional witness in keeping with the employer's policy), and at least on the second entry the purpose was to establish cause to fire plaintiff; thus the second was an unjustified intrusion upon plaintiff's privacy.
Affirmed.
NOTES
[1] According to one stock clerk, another was talking to plaintiff, then plaintiff left her shopping cart and the other stock clerk repriced an item and placed it in plaintiff's cart. The first clerk reported this to the security guard, who unobtrusively verified that the price on the item in plaintiff's cart was substantially lower than that of similar items on the store shelf.
[2] Plaintiff says that it was because she did not have enough money (and that she therefore removed several items). She also testified, however, that she had just cashed her pay check. If plaintiff in fact was engaged in a cheating scheme notwithstanding the alleged accomplice's statements that she was unaware of his act of reducing the price, other possible inferences include that plaintiff repented before the scheme's conclusion, or, because the plainclothes security guard was known to plaintiff, that plaintiff might have suspected that the guard was aware of her activities and therefore abandoned the scheme. (The alleged accomplice testified that he had intended to reveal his "joke" to plaintiff before she checked out, butas is undisputedhe injured his arm and had to be taken to the doctor.)
[3] Plaintiff's employer's president first testified that he had no other opening, but then recalled that he would have transferred her except that she was a frequent violator of hairnet and uniform rules and would have been discharged shortly in any case.