## THREE RIVERS HARDWOOD LUMBER CO., Inc., v. GIBSON.

### No. 5654.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

D. W. Gibson, of Harrisonburg, for appellant.

J. M. Reeves, of Vidalia, for appellee.

HAMITER, Judge.

Allegations are made by plaintiff, in this suit on an open account, that it sold and delivered to defendant between the dates of March 31, 1930, and June 1, 1930, cer-

tain described merchandise amounting in all to $591.49, and that the defendant has paid therefor only the sum of $74.72. Judgment is asked for the alleged unpaid balance of $516.77, together with legal interest thereon from June 1, 1930, until paid.

Defendant denies that the indebtedness is his obligation, and affirmatively avers that he placed the orders for the merchandise as an agent and employee of the William Lorimer Lumber Company, and that it was bought for the account and in the usual course of business of said company, all of which was well known to plaintiff.

A trial of the case resulted in a judgment for plaintiff for the principal amount sued for, with legal interest thereon from November 30, 1936, the date of the judgment, until paid. Defendant appealed devolutively.

An answer to the appeal has been filed in this court, in which appellee asks that the judgment be amended by awarding legal interest from June 1, 1930, or, alternatively, from date of judicial demand which was April 27, 1933, and that, as amended, it be affirmed.

There is no dispute as to the correctness of the account on which the suit is founded. ' The only question is whether or not defendant is legally responsible for its payment, his contention being, as is disclosed by the answer, that the obligation is solely that of his employer, the William Lorimer Lumber Company.

The indebtedness was incurred between March 31, 1930, and May 27, 1930, both dates inclusive, and resulted from the sale by plaintiff of lumber and other materials which were used in the repairing of some barges and a derrick boat formerly operated by the William Lorimer Lumber Company in connection with its business.

It is the testimony of Mr. E. H. Scott, the manager of plaintiff corporation and who started in its employ in December of 1928, that defendant applied to him for personal credit in the purchasing of the materials, and that such was extended. Defendant did not seek credit' for the William Lorimer Lumber Company, and, if he had, it would have been denied because that company ceased operating its mill in the year 1926, and it was reputedly insolvent in 1930. When the indebtedness was incurred Scott did not know who owned the equipment undergoing the repairs, although he was aware of the use being made of the materials sold. The orders were placed from time to time by defendant and other persons associated with him; however, all of the articles were billed and invoices describing them sent to defendant, Tal C. Gibson. Mr. Gibson at no time protested these invoices, and neither said nor indicated to Scott that he was making the purchases for anyone else. The William Lorimer Lumber Company, which had never enjoyed credit with plaintiff or purchased anything from it, was not sent invoices or statements. Defendant Gibson had previously bought lumber from plaintiff's establishment for himself.

On being questioned as to when he first learned that defendant contended that the obligation was not his but that of someone else, Scott stated:

"Shortly before the period of three years was out I went to Mr. Gibson and asked him to pay this account. I told him that if he did not have the money at the time to give me his note and then I could carry it for him, but I had to get it in some shape to protect ourselves and at that time Mr. Gibson told me that if he gave me a note that that would acknowledge the debt and that he did not owe it, that it was the debt of the Jonesville Towing Company."

Mr. Gibson testified that for a period of eighteen years he had held various positions with the William Lorimer Lumber Company, namely, stenographer, bookkeeper, assistant manager, and assistant treasurer, and that he occupied the latter when the materials were purchased; that the sawmill property of that company was sold for taxes in the year 1929; and that its remaining property, which included the barges and boat, was turned over, about the time the indebtedness in question was created, to the Jonesville Towing Company for a one-half interest in the business; and that he owned no interest in said property. The equipment was to be used by the towing company for the purpose of pumping gravel. When asked if he would swear that he did not open the account with plaintiff, he gave a negative answer. He admitted having received invoices and statements from time to time disclosing that the materials were charged to him. The question was propounded to Mr. Gibson: "Did you at the time you entered the first order with Mr. Scott tell him anything about your ordering in behalf of the William Lorimer Lumber Company, or

being directed to do this?" He replied: "I have no idea that I did."

Defendant further testified, and plaintiff's manager admitted, that the two payments credited on the account were made with checks signed, "William Lorimer Lumber Co., by Tal C. Gibson", said company's name being typewritten thereon.

The law relating to an agent's duty to disclose his agency status and the identity of his principal, in order to avoid personal liability, is well stated in 3 Corpus Juris Secundum, verbo, Agency, § 216, as follows:

"If his agency and the identity of his principal are unknown, an agent, to avoid personal liability on a contract to be entered into on behalf of his principal, has the duty to disclose both the fact that he is acting in a representative capacity and the identity of his principal, for the party dealt with is not required to discover or to make inquiries to discover such facts. Accordingly, where the agent contracts as ostensible principal, regardless of his intention, and notwithstanding his lack of personal interest in the consideration, he will be personally liable on the contract as if he were principal, and he has the same obligations to the other party as if he were not acting for another. If the fact of his agency is known and there is a mutual intention that the principal and not the agent is to be bound, the latter is not liable, although the identity of the principal is undisclosed, but generally, unless there is an agreement or mutual intention of the parties to the contract that the agent should not be bound, an agent who enters into a contract in his own name without disclosing the identity of his principal renders himself personally liable, even though the other party knows that he is acting as an agent. Where the other party has actual knowledge of the agency and the identity of the principal, the agent will be relieved from liability, whether he himself makes the disclosure or the other party acquires the knowledge through some other source, but actual knowledge is necessary, and it is not sufficient that the third person has knowledge of facts and circumstances which would, if reasonably followed by inquiry, disclose the identity of the principal. An express notice of agency and the identity of the principal is not necessary, however, if the third person may be charged with notice by reason of the attendant circumstances and the facts surrounding the transaction, coupled with the general knowledge that transactions of the agent in that particular line of business are entered into in his character as agent, not on his own behalf, but the mere fact that one is known to be a professional agent usually employed in contracting as agent for others is not of itself sufficient where the agent contracts in his own name as ostensible principal."

A consideration of all of the evidence in the record of the instant case convinces us that the repairing of the barges and boat and the obtaining of the materials were not solely for the individual and personal benefit of defendant. Indications are that others were interested in the venture. However, we are equally convinced that plaintiff had neither actual knowledge of any agency relationship that defendant might have occupied at the time or of the identity of his principal or principals, nor constructive knowledge of such by reason of the attendant circumstances and facts surrounding the transaction, so as to relieve defendant from the obligation which he caused to be created. It is our belief that there was no mutual intention of the litigants that the William Lorimer Lumber Company was to be bound. This view is entertained primarily because of the admitted unsatisfactory financial condition of the William Lorimer Lumber Company at the time and the failure of defendant to protest, during a period of several years, the carrying of the account in his name.

The fact that the two checks bearing the name of the William Lorimer Lumber Company and signed by defendant were accepted as payments on the account is not especially significant. It is well known that occasionally, although perhaps not frequently, a company issues and delivers its check in payment of or as credit on an individual and personal account of an employee.

Appellee's answer to the appeal questions, as before stated, the trial court's decree regarding the imposition of interest. Civil Code, article 1938, states that,—

"All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated."

The record does not reveal the exact date on which the indebtedness under consideration became due. However, under the jurisprudence of Louisiana it must be

considered as being matured when the suit was filed (American Hardwood Lumber Co. v. Kesterson, 147 La. 840, 86 So. 285), and bears legal interest from judicial demand until paid.

Accordingly, the judgment is amended so as to award five per cent per annum interest on the principal sum from judicial demand until paid, and, as amended, it is affirmed with costs.