76 So.2d 463 (1954)
JAHNCKE SERVICE, Inc., Plaintiff-Appellant,
v.
L. W. HEASLIP, Defendant-Appellee.
No. 20348.
Court of Appeal of Louisiana, Orleans.
November 8, 1954.
Rehearing Denied January 3, 1955.
*464 Dart, Guidry, Price & Read and Henry P. Dart, III, New Orleans, for plaintiff-appellant.
Marcus & Steeg, Moise S. Steeg, Jr., New Orleans, for defendant-appellee.
JANVIER, Judge.
Plaintiff, Jahncke Service, Inc., claims of defendant, L. W. Heaslip, $439.18 as the unpaid purchase price of certain building materials and supplies which it alleges it sold to plaintiff. Defendant, while admitting that the materials and supplies were sold and delivered and that the prices are correct and that payment has not been made, denies that the sales were made to him or that he received the articles, and avers that the sales were made to L. W. Heaslip, Inc., a corporation. From a judgment dismissing the suit plaintiff has appealed.
The facts are not in dispute. Prior to December 19, 1947, L. W. Heaslip was engaged in business in and around New Orleans as a general contractor. In 1945 or 1946 he called upon Fred W. Hellbach, the credit manager of the Jahncke Company and requested that a line of credit be extended to him. His request was granted and in his contracting business orders placed by him were delivered to him by the Jahncke Company.
On December 19, 1947, Heaslip, because of the hurricane of September, 1947, became financially involved and he formed a corporation known as L. W. Heaslip, Inc., to take over the contracting business which he had theretofore conducted. Up to that time all bills rendered to Heaslip by the Jahncke Company were paid by Heaslip individually.
The record contains no reference to any transactions between the time of the organization of the Heaslip corporation and the beginning of the year 1952, but it does appear that between January 24, 1952, and March 7, 1952, seventeen sales were made by the Jahncke Company, the smallest for $8.34 and the largest for $239.17. All of these sales, so far as can be ascertained from the record, were on orders received from L. W. Heaslip. He contends that in placing each order he was acting for the corporation of which he was President and General Manager.
When each of these orders was received by the Jahncke Company, the charge was entered on its books as a sale to L. W. Heaslip and in each case an invoice was issued to L. W. Heaslip. In none of these book entries and in none of these invoices did the name of the corporation appear.
The record shows, however, that all but one of these seventeen orders were paid for by five checks of L. W. Heaslip, Inc. These checks are in the record and each bears the printed name of L. W. Heaslip, Inc., at the top and again just above the signature. Each of these checks was signed by L. W. Heaslip, President and R. M. Crane, Secretary-Treasurer. The other or sixth payment was made by check which is not in the record, but which is shown to have been issued by L. W. Heaslip, Inc., and its "surety." Apparently at that time the Heaslip corporation had encountered financial difficulties and the surety, on its contractor's bond, joined with Heaslip in making that payment.
Still later the materials and supplies, on which this suit is based, were sold all on the order of L. W. Heaslip who again says that in placing these orders he was acting for the Heaslip corporation and not for himself individually.
It is conceded by Heaslip that at no time until long after the delivery of these orders was any express notice given to the Jahncke Company that the purchases which were being made were for account of the Heaslip corporation.
It is the contention of the Jahncke Company that it extended the credit to Heaslip *465 individually, and that, since it was never notified that the later purchases were being made by and for the Heaslip corporation, it was justified in assuming that all of the purchases which were ordered by Heaslip were for his individual account and that it had no means of knowing that they were for the Heaslip corporation, and plaintiff points to the fact that on every one of the seventeen prior invoices, all of which were paid, the sale was shown to have been made to L. W. Heaslip. Plaintiff also shows that this was true in every one of the thirteen invoices for which payment has not been made and which are involved in this suit. All were issued to L. W. Heaslip and not to the Heaslip corporation.
Defendant, on the other hand, points to the fact that though the seventeen invoices, showing purchases for which payment was made, were issued to L. W. Heaslip, payments for all of those purchases were made by checks of L. W. Heaslip, Inc., or by L. W. Heaslip, Inc., and its surety, and defendant argues from this that the Jahncke Company was put on notice that it was the Heaslip corporation and not Heaslip himself which was making the purchases.
Defendant contends, too, that plaintiff should have known that it was the Heaslip corporation which was engaged in the contracting business because most of the materials and supplies which were being purchased were delivered to sites where building construction jobs were being conducted, and that at least one of those buildings was being constructed under a building contract in notarial form which was duly recorded in the mortgage office.
The first actual notice which the Jahncke Company had of the incorporation of the Heaslip Company came to it on May 7, 1953, long after all the goods had been delivered. This notice was in the form of a letter addressed to the "Creditors of Lawrence W. Heaslip and L. W. Heaslip, Inc.," and invited the creditors to a meeting to discuss the financial status of L. W. Heaslip, Inc.
We think that it cannot be said that the mere fact that the Jahncke Company accepted five or even six checks of the Heaslip Company, or which bore the name of the Heaslip Company could be said to have put the Jahncke Company on notice that it was dealing with the corporation and not with Heaslip individually.
As the Court of Appeal for the Second Circuit, in an almost identical situation, said in Three Rivers Hardwood Lumber Co., Inc., v. Gibson, 181 So. 607, 609:
"The fact that the two checks bearing the name of the William Lorimer Lumber Company and signed by defendant were accepted as payments on the account is not especially significant. It is well known that occasionally, although perhaps not frequently, a company issues and delivers its check in payment of or as credit on an individual and personal account of an employee."
The legal question presented there cannot be distinguished from that which confronts us. Counsel for defendant contends that a distinction lies in the fact that there only two checks of the corporation were accepted by the plaintiff, whereas here six were accepted. And counsel point to the statement that "occasionally, although perhaps not frequently," such checks are issued by a corporation for the personal account of an employee. We do not think that that slight difference would justify a conclusion different from that reached by our brothers of the Second Circuit.
Wilson Sporting Goods Co. v. Alwes, La. App., 21 So.2d 102, 103, may be distinguished easily. There the orders were placed by the principal of a high school. It is contended that the principal, Mr. B. C. Alwes, acknowledged the account and promised to pay it. However, the written acknowledgement is signed "Donaldsonville High School, B. C. Alwes Principal." Obviously this was not an acknowledgement by Alwes in his individual capacity.
*466 We think that a distinction does not lie in the fact that here one of the building contracts was recorded in the mortgage office. We see no reason which would require that the vendor of materials, who is satisfied with the credit rating of the purchaser, must examine the mortgage records every time a sale is made to see just where the materials are to be used. This may become necessary later if payment is not made and the vendor of the materials finds it necessary to hold the surety of the contractor. But the fact that there is such a contract cannot be pointed to to show that the vendor should have known that the materials were not sold to the person who actually placed the order.
The theory on which the Court reached its conclusion in the Three Rivers Hardwood Lumber Co. case, supra, is that it is the duty of an agent to disclose his agency status and the identity of his principal if he would avoid personal liability for contracts made by him. This rule is well stated in 3 C.J.S., Agency, § 216.
There is one other fact which is pointed to by plaintiff. It is not denied that, long after these sales had been made, and payment had not been made, a call was made on Heaslip in an effort to find out why the payments had not been received and Heaslip said that he intended to pay them personally. Fred W. Hellbach who made the call on Heaslip says that he asked him why the Jahncke Company had not been sent an earlier notice of a meeting of creditors and he says that Heaslip told him "that he didn't include me in it, because he was going to see to it personally that our account was paid." Since this statement, which is not denied, was made after all of the purchases had been made, it cannot be pointed to as a guarantee by Heaslip. However, it evidences the fact that Heaslip realized that the credit had been extended to him personally and that the Jahncke Company had never been put on notice that the subsequent sales were being made to the Heaslip corporation.
It is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed and there now be judgment in favor of Jahncke Service, Inc., and against L. W. Heaslip in the full sum of $439.18, with legal interest from judicial demand until paid, and for all costs.
Reversed.