DANIEL L. DYSART, Judge.
1 ⅜James Hotard, Jr., Jane Hotard, and James Hotard, Sr., appeal the September 2, 2014 judgment granting the Petition for Declaratory Judgment filed by Wirthman-TAG Construction Company, L.L.C.; dismissing, with prejudice, all claims against Thomas A. Gennusa, III, and Ronald Wirth, Jr., individually; awarding Wirth-man-TAG Construction Company, L.L.C., $11,200.00 for contractual amounts due from Jane and James Hotard, Jr., plus interest and costs; and, awarding Wirth-man-TAG Construction Company, L.L.C., $90,000 in damages against James Hotard, Sr. The trial court also awarded attorney fees and costs, which were to be determined at a later date. For the reasons that follow, we affirm the judgment of the trial court in part as to the individual liability of Thomas Gennusa, III, and Ronald Wirth, Jr. The remainder of the judgment is reversed, and judgment rendered in favor of defendants, James Hotard, Jr., Jane Hotard, and James Hotard, Sr.
I «.PROCEDURAL BACKGROUND:
Wirthman-TAG Construction Company, L.L.C. (“plaintiff’ or “Wirthman-TAG”) filed a Petition for Declaratory Judgment on September 9, 1999, seeking to declare Jane and James Hotard, Jr. (“the Ho-tards”), in breach of a construction agreement and subsequent settlement agreement, and to recover attorney fees, costs and interest. Additionally, in a separately filed suit, plaintiff sued Robert Anderson, Anderson Consulting, Inc.,[1] and James Ho-tard, Sr., for damages incürred as a result of their involvement in the slab elevation problems which arose during construction of the house. The Hotards reconvened against plaintiff and filed a third-party demand against Thomas Gennusa, III (“Gen-nusa”), and Ronald Wirth, Jr. (“Wirth”), individually,- for damages associated with their alleged breach of the construction contract. The cases were consolidated for trial.[2]
*432 .The trial of this matter began on November 5, 2012, and'continued on November 7 and 13 of 2012. For reasons not evident from the record, the trial did not resume until June 2, .2014, continuing through June 5, 2014. The trial concluded on July 14, 2014. ; The court requested that the parties submit post-trial memo-randa by August 1, 2014. A judgment and written reasons were issued on September 2,2014. This appeal followed.
JjDISCUSSION:
These consolidated cases involve both questions of law and questions of fact. In the case filed by plaintiff against the Ho-tards, the trial court was asked to determine if the Hotards had breached the construction contract they entered into with plaintiff for the construction of their house. The other suit sought damages against Robert Anderson and Robert B. Anderson Consulting Engineers, Inc., for faulty house plans, and James Hotard, Sr., for his alleged involvement and interference with the construction of the house.
As the Louisiana Supreme Court explained .in Wooley v. Lucksinger, 09-0571, p. 49 (La.4/1/11), 61 So.3d 507, 553-55:
The Louisiana Constitution provides that the appellate jurisdiction of a court of appeal in a civil matter extends to both law and facts. La. Const. 1974, art. 5, § 10(B). Questions of law are reviewed de novo, with the judgment rendered “on the récord, without deference to the legal conclusions of the tribunals below.” Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 2006-0582 p. 9 (La.11/29/06), 943 So.2d 1037, 1045; citing Louisiana Municipal Association v. State, 2004-0227 p. 35 (La.1/19/05), 893 So.2d 809, 836. This constitutional provision has also “been interpreted as giving an appellate court the power to decide factual issues de novo.” Ferrell v. Fireman’s Fund Ins. Co., 1994-1252 p. 3 (La.2/20/95), 650 So.2d 742, 745. However, while a court of appeal may have the constitutional authority to make a de novo review of a factual finding, the exercise of this power has been limited by-the jurisprudential rule that a trial court’s factual findings will not be upset unless they are manifestly erroneous or clearly wrong. Brewer v. J.B. Hunt Transport, Inc., 2009-1408 p. 9 (La.3/16/10), 35 So.3d 230, 237.
LThus, as the question before this Court is whether the trial court erred in finding that the Hotards breached the construction contract, a question of law, we must conduct a de novo review of the record, being mindful that the factual findings of the trial court are examined for manifest error. Id.
As to the judgment rendered against James Hotard, Sr., because the judgment is founded in tort, we review that portion of the judgment applying the manifest error/clearly wrong standard. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The Hotards assert numerous assignments of error based on findings of fact by the trial court. They argue that the trial court erred in granting the declaratory judgment, on the basis of the *433 factual findings that they underpaid bank draws, prevented plaintiff from completing the work, and were in bad faith by intentionally breaching the construction contract. They also argue that the trial court erred in not finding that plaintiff breached the contract, and in not awarding them damages for the breach. The Hotards further argue that the trial court erred in not finding that Gennusa and Wirth were personally liable for their damages. Last, they argue that it was error to find James Hotard, Sr.,, negligent for his peripheral role in the construction of their home, as he owed no duty to plaintiff.
The trial court stated in its reasons for judgment that the contract price was $378,000, plus any change orders, and that the project would include five equal bank draws, each to be paid after completion of various stages of construction. | ¿The reasons further set forth that plaintiff would notify the Hotards that a draw was due.
The Hotards claim that there was no evidence to support a finding that they underpaid the bank draws requested by plaintiff or that their payments were late. The construction contract establishes that the cost of construction was $378,000, to be paid by bank draws. Although plaintiff claims that the contract provides for equal draws of $75,600 as stages of the construction were completed, a contention relied upon by the trial court, the contract does not so state.
The contract, which was entered into on June 26, 1998, provides for the total cost of the project, $378,000, and that the amount was to be paid by bank draws. Article 4 of the contract entitled “Progressive Payments,” ¿gain simply states “Bank'Draws.” There is no provision for payment of change orders. Under the General Provisions article, the contract states “In the event Owner shall fail to pay any periodic or installment payment due to hereunder. [sic] Contractor may cease work without breach pending payment or resolution of any dispute.” It is, axiomatic in our law that any lack of or ambiguity in a provision of a contract is construed against the party who- prepared the contract.. If the ambiguity “arises from lack of a necessary explanation that one party should have given ... the contract must be interpreted in a manner favorable to the other party.” La. Civ. Code art. 2057; Foshee v. Georgia Gulf Chemicals & Vinyls, L.L.C., 09-2477, pp. 3-4 (La.7/6/10), 42 So.3d 346, 348; Pollard v. Schiff, 13-1682, p. 10 (La.App. 4 Cir. 2/4/15), 161 So.3d 48, 55. Here, it is undisputed that Wirthman-TAG prepared the contract.
Thus, to find that the Hotards breached the contract because of “late” payments is error. The contract does not provide any timeline for payments, either at different stages of construction or by established dates.
The record evidence demonstrates that an invoice was sent to - the Hotards on October 28,1998, for $77,350, which included a draw of $75,600. and $1,750 for an upgrade in the window selection. The record confirms that the invoice was paid the next day, October 29,1998.
In November of 1998, it was discovered that the slab that was poured for the house was twenty inches below the height called for in the plans. Plaintiff and the Hotards eventually-entered into a settlement agreement whereby plaintiff would deconstruct the framing on the house, and pour an additional slab to attain the proper height. Plaintiff agreed to pay for the additional slab, to dismantle and reframe the house, and to make other changes requested by the Hotards. At the Hotards’ expense, not to exceed $5,500, plaintiff agreed to raise the carport slab an additional twelve inches, and to rearrange the outside bathroom. Plaintiff agreed to make other mi- *434 nor1 changes to the plans subject to written and signed change orders. Plaintiff also agreed to pay the Hotards’ legal fees and engineering consultation fees. Last, plaintiff agreed to pay the interest incurred on the interim financing which accrued due to the delay in the project, beginning November 24, 1998. The agreement further provided that all of the construction would be substantially 17completed by April 30,1999, and, if not, plaintiff would pay the interest on the interim financing from April 30 until completed.
Once construction on the house resumed, the Hotards were billed for raising the carport slab and for a change order. Both invoices were paid within a week of issue. The record -does not contain invoices for the second and third draw, but the record does indicate that thé Hotards submitted two checks of $75,000 each, one on June 3 and one on June 24, 1999. The Hotards submitted another check on July 6, 1999, for $18,221 to cover a June 28, 1999 change order.
Per the Hotards’ request, plaintiff prepared an itemization of payments to date and payments to be made. The list, dated August 3, 1999, indicates that draws No. 2 and 3 should have been for $75,600, not the $75,000 paid, and that draw No. 4 ($75,600) was currently due. Draw No. 5, equal to 15% of the balance, would be due upon substantial completion, and Draw No. 6, equal to 5% of the balance, would be due upon completion of the punch list.
On August 10, 1999, the Hotards made a payment of $70,000. Jane Hotard testified that she explained to Gennusa that the payment was short as she and her husband were helping to pay burial costs for her brother-in-law and nephew who had been killed in an automobile accident. Plaintiff sent a letter dated August 18, requesting payment of $6,457. 19 for a June invoice for additional fill, and the balance of draw No. 4. The Hotards submitted a check for $3,927.59 on August 23. An attached memo indicated that the Ho-tards believed they were due a credit |sfor a double billing, and thus had deducted $547 from the balance due on draw No. 4.
The Hotards testified that they disputed the amount due for additional fill because the supporting invoices submitted by one of the subcontractors indicated fill was delivered to addresses on General Haig and General Diaz, thus causing, confusion as to whether ¡.they were being billed for fill delivered to another address. The Ho-tards sought clarification of the invoice in question.
On August 27, 1999, counsel for plaintiff sent a demand letter for the unpaid invoice and for the list of expenses incurred by the Hotards in connection with the settlement agreement. Further, counsel indicated he had been informed that the Hotards intended not to pay the, total amount due upon completion of the project until the punch list was satisfied. Counsel for plaintiff informed the Hotards that his client “expects the balance of the money to be put in escrow to be drawn down as the work is completed.” If an agreement was not reached within five working days, plaintiff would file suit to collect the outstanding balance and damages for breaching the contract.
James Hotard, Jr., sent a letter to plaintiff on August 31, 1999, itemizing the expenses incurred in connection with the foundation settlement agreement.[3] The Hotards also paid the outstanding invoice for fill on September 1, 1999, under pro *435 test. An accompanying letter from the Hotards’ attorney stated that the Hotards Iswonld continue to abide by. the conditions of the contract and expected plaintiff to do the same.
The record evidence does not support a finding that the Hotards failed to timely pay invoices, and we thus find the trial court erred in finding the Hotards breached the contract in that regard,
The Hotards next argue that the trial court erred in fitiding that they had breached the contract by intimating to Gennusa that they would not pay the final draw until some unspecified date after move-in. The only evidence of this contention was the testimony of Gennusa. As the house was not substantially completed at the time the plaintiff ceased work, no other payments were due. The Hotards could not be held in breach of contract for an event that had not yet taken place; thus, it was error for the trial court to consider this allegation as proof of breach of the construction contract.'
The trial court also found the Ho-tards had breached the contract by failing to place the remaining funds due in an escrow account. The construction contract contains no such provision. A demand to place the funds in escrow was contained in plaintiffs counsel’s letter of August 27, 1999. The letter also contained conditions that James Hotard, Jr., refrain from visiting the jobsite and that a third-party be appointed to act on behalf of James Ho-tard, Jr., in dealings with plaintiff. We find the demands made in plaintiffs counsel’s letter fall far outside the parameters of the construction contract. The Hotards cannot be held to have breached conditions not contained in the contract. Iteld v. Four Corners Constr., L.P., 12-1504, p. 15 (La.App. 4 Cir. 6/5/13), 157 So.3d 702, 713 ([A] contract should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms ....)
The Hotards also argue that the trial court erred in finding that plaintiff was forced to leave the job because of threats and intimidation by James Hotard, Jr., to Gennusa. The only evidence of any behavior contained in the record is the testimony of Gennusa, regarding an incident that took place five years after the suit was filed. There was no evidence of any threats or intimidation by James Ho-tard, Jr., before Wirthman-TAG stopped work on the home.
Although by jurisprudential rule, this Court must give great deference to the trial court in ju4ging credibility,[4] our thorough review of the record indicates, that there is no basis in fact for the trial court’s finding that James Hotard, Jr., threatened or intimidated Gennusa, such that plaintiff was justified in abandoning the construction project.,. Indeed, the trial judge interjected at one point, and stated:
One of the issues in the case has been the hostile interaction among the parties. There’s been very little evidence or testimony related to that. So.J’m going to need that. You claim it , happened. You claim it didn’t. Somebody needs to tell me something.
In an attempt to corroborate Gennusa’s testimony, plaintiff called a rebuttal witness whose only testimony was concerning two incidents that happened years after the litigation began. As such, we find the evidence of threats and intimidation by James Hotard, Jr., was insufficient to sustain a finding of breach of contract.
*436 In Accordingly, based on our reading of the record as a whole, we find the trial court erred in finding that the Hotards breached the construction contract and in granting the Petition for Declaratory Judgment. -The reasons assigned by the trial court for granting the petition are totally unsubstantiated by the corroborating evidence.
The Hotards also appeal the trial court’s finding that they are not entitled to damages for plaintiffs breach of contract. We agree.
. The record clearly supports a finding that the Hotards were not at fault for plaintiffs refusal to complete the construction of their house. As stated above, the Hotards were not late in paying requested bank 'draws or additional invoices for change orders. The contract, prepared by plaintiff, did not contain any provisions for the time or event to trigger a payment. Further, we find the payments demanded by plaintiff were paid by the Hotards within a reasonable period of time. The payments which could have been considered delayed were the result of disputes over the amount charged. The record demonstrates that the delayed payments were made under protest and before the underlying suit was filed.
Because plaintiff would not complete the job, the Hotards were forced to hire another contractor to complete construction of their house, who agreed to do the job on a time and materials basis. The contractor testified that the house was less than eighty percent complete when he undertook the project. At that point, the Ho-tards had already paid plaintiff at least eighty percent of the contractual price. The cost to the. Hotards to have their house completed was $192,690.79.
112Louisiana Civil Code art. 2769 provides:
If an undertaker fails to do the work he had contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
Thus, as we find that plaintiff breached the construction contract, the Hotards are entitled to damages in the amount of $192,690.79. Additionally, we find that the Hotards are entitled to the $11,167.74 of expenses incurred in connection with the settlement agreement with Wirthman-TAG.
The ‘Hotards argue that the trial court erred in not finding .Thomas Gennu-sa, III, and Ronald Wirth, Jr., personally and individually liable for damages. They contend that they were not aware that Wirthman-TAG was a limited liability company. James Hotard, Jr., testified that if he had known that the contractors were organized as a limited liability company, he would not have contracted with them.
The original construction contract states that it is an agreement between Wirth-man-TAG Construction and Mr. and Mrs. Jim and Jane Hotard. Gennusa and Wirth signed for Wirthman-TAG. James Ho-tard, Jr., and Jane Hotard signed as Owners. The Hotards assert that they believed Wirthman-TAG was a trade name, and that they were unaware that the construction company was any type of formal entity. They claim that them first notice that Wirthman-TAG was a limited liability company was when they signed the settlement agreement in December of 1998.
| ^Plaintiff counters that the Hotards were placed on notice of its legal status prior to the construction contract being signed. Specifically, the Hotards’ lending institution required proof that the contrac *437 tor was sufficiently insured, and plaintiff provided them with a commercial general liability certificate of insurance covering Wirthman-TAG Construction, L.L.C. A second policy for builder’s risk insurance coverage was also provided naming Wirth-man-TAG Construction, L.L.C., as the insured.
Plaintiff further argues that the contract' itself states that the contract is between Wirthman-TAG Construction and the Ho-tards. Gennusa’s and Wirth’s names do not appear in the body of the contract. The signature page indicates that the agreement was signed in the presence of Wirthman-TAG, “by” Thomas A. Gennusa, III, and Ronald Wirth, Jr., indicating their representative capacity. The Hotards also made checks payable to Wirthman-TAG. Thus, plaintiff argues it is clear that the contractor was Wirthman-TAG, and not Gennusa and Wirth individually.
The Hotards cite to Transport Refrigeration of La., Inc. v. D'Antoni, 281 So.2d 469 (La.App. 4th Cir.1973), for the proposition that a corporate agent contracting on behalf of the corporation must disclose his representative status and the identity of his principal to avoid personal liability. Id. at 471 (citing Jahncke Service, Inc. v. Heaslip, 76 So.2d 463 (La. App.Orl.1954)). A careful reading of the D Antoni case, however, explains that the “facts and circumstances of each case determine whether or not the individual sufficiently disclosed that he was acting in |14a representative capacity so as to alert the other contracting party that the contract was with a corporation.” Id.
Our reading of the record does not convince us that the trial court erred in not finding Gennusa and Wirth individually liable for the Hotards’ damages. When considering the totality of the circumstances and the record evidence, we find that there was sufficient notice to the Hotards that Wirthman-TAG Construction was operating as a juridical entity. See George v. White, 12-101 (La.App. 5 Cir. 10/30/12), 101 So.3d 1036, citing J.T. Doiron, Inc. v. Lundin, (La.App. 1st Cir.1980), 385 So.2d-450, 452-3.
The last assignment of error raised is that the trial court erred in finding James Hotard, Sr., hable for the cost of correcting the slab elevation on the Hotard house.
In the consolidated lawsuit, plaintiff sued Robert Anderson, the engineer who designed the plans for .the house, and James Hotard, Sr., claiming that the problems incurred with the slab elevation were a direct result of Hotard, Sr.’s, actions.
Hotard, Sr., upon learning that his son and daughter-in-law planned to construct a house, ordered an elevation certificate in November of 1997, months.before the Ho-tards signed a contract with plaintiff. The elder Hotard,-a retired civil engineer for Boh Bros., asked Ray Saucier, a former subordinate, to order a “construction package,” which included an elevation certificate. Hotard, Sr., had no contact with Wirthman-TAG, was not a party to the contract between the | ^Hotards and Wirthman-TAG, and did not personally set the benchmark for the slab elevation.
The record indicates that Wirthman-TAG also ordered an elevation certificate, but not until after the initial slab was poured, the house was framed, and problems with the elevation were detected. Wirthman-TAG also ordered a second elevation certificate after the additional slab was poured.
We fail to see how Hotard, Sr., can be held responsible for the slab elevation based solely on th¿ fact that he ordered a survey of his son’s property more than six months prior to the construction contract being signed. Plaintiff cites to no law or *438 jurisprudence to support its position. To the contrary, the contractor had a duty to have the slab poured to the proper elevation. Thus, it was incumbent on the contractor to have the property surveyed and the elevation certified. Alternatively, if plaintiff relied on the plans drawn by Robert Anderson, the engineer hired by the Hotards to design their house, and those plans were incorrect, then Anderson’s deficient plans were the proximate cause of plaintiffs damages. There was no evidence produced at trial to suggest that the benchmark was placed in error. In fact, Louis Hartman, a land surveyor called as a witness by plaintiff, testified that when his firm visited the property in June of 1998, they found that the benchmark was one-half inch below base flood elevation, and therefore within an acceptable | ^variance.[5] Thus, we find it was error for the trial court to find Hotard, Sr., liable for plaintiffs damages.
The record is also void of evidence regarding the $11,200 awarded to plaintiff for an allegedly unpaid invoice. Further, the petition for declaratory judgment does not seek monetary damages; rather, it seeks to have the construction contract between the parties deemed void. We therefore set aside that monetary award contained in the judgment.
Finally, the construction contract between the parties sets forth that in the event of litigation, the “Loser” will incur all attorney fees and court costs. Accordingly, this case is remanded for a determination of attorney fees and costs.
For the reasons set forth herein, the judgment of the trial court is affirmed as to the individual liability of Thomas A. Gennusa, III, and Ronald Wirth, Jr., and is reversed in all other respects. Further, it is ordered, adjudged and decreed that there be judgment in favor of James Ho-tard, Jr., and Jane Hotard, and against Wirthman-TAG Construction Company, L.L.C., in the amount of $203;858.53, together with legal interest from the date of judicial demand until paid, and for attorney fees and costs to be determined by the trial court.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED; REMANDED FOR ASSESSMENT OF ATTORNEY FEES AND COSTS

. The claims against Robert Anderson .and Anderson Consulting, Inc., were settled during trial.

. Initially, plaintiff filed an Exception of No Cause of Action/No Right of Action arguing that Gennusa and Wirth could not be sued as individuals as they were acting at all times on *432 behalf of the limited liability company, Wirth-man-TAG. The trial court granted the exception and the Hotards appealed. This Court reversed, noting that the trial court had only ruled on the Exception of No Right of Action, and finding that Wirthman-TAG was not the proper party to assert an exception of no right of action on behalf of the individuals. Thus, Gennusa and Wirth remained in the lawsuit as third-party defendants. See Wirthman-TAG Construction Co., L.L.C. v. Hotard, 00-2298 (La.App. 4 Cir. 12/19/01), 804 So.2d 856.

. James Hotard, Jr., itemized the expenses as $8,412.36 for construction interest from November 24, 1998 to August 19, 1999, $427.62 for a consultation with an architect, $2,109.00 for permits, and $43.50 for water bills, totaling $11,167.74.

. Rosell, 549 So.2d at 844-845.

. We also note that the record contains no evidence of the damages allegedly incurred by plaintiff. Gennusa testified that it cost his company approximately $90,000. This self-serving evidence is insufficient proof of loss.